# TRENT IMPORT COMPANY, A Corporation, *vs.* JERE H. WHEELWRIGHT.

*Corporations: subscriptions to stock; legality; law of home State; bonus stock; stock issued for property, rights, etc. New York corporation stock law: when full paid. Contracts: indivisible; ultra vires contract.*

Under the New York Stock Corporation Law, a corporation can not issue common stock for which no money had been or will be received by it from any source, and which represents no return to it in property or labor equal in fact to the par value of the stock, or so estimated in good faith by the directors. p. 258

Stock is not issued for property or labor "so valued in good faith by the directors" when it is issued for property or labor not worth its par amount, and without an honest belief and determination on their part that such property or labor had the requisite value or without any knowledge to them on the subject and in reckless disregard of the real worth of such property or labor. p. 258

Where in an indivisible contract of subscription to the preferred and common stock of a corporation, the contract is void as to the common stock, it is void wholly even as to the preferred stock. pp. 260-261

Where a foreign corporation brings suit to recover a subscription for stock, the defendant may show that the contract upon which he is sought to be held liable is illegal by the law of the State of such corporation. p. 262

Before the formation of a corporation, W. agreed with the promoter and other subscribers to take a certain amount of preferred stock of the corporation (when formed); as a bonus for such subscription, as part of the contract, it was agreed that the corporation should issue him 50% of

his subscription in common stock; in a suit by the corporation against him for such subscriptions, it was *held* that such common stock (under the facts of the case) was necessarily to be either (1) unissued stock unlawfully issued as bonus stock to the subscriber for no value, or (2) stock which had been unlawfully issued to the promoter for worthless property not taken at a fair valuation and which had been returned by the promoter to the corporation for the purpose of being issued to subscribers, and that, therefore, the corporation could not sue W. upon such an agreement since the agreement could not be fully performed on its part except in connection with the issuance by it of stock on terms forbidden by law.                           p. 260

An executory contract with a corporation for an illegal issue of stock as full paid and non-assessable will not be enforced even though the subscriber would not, by his acquisition of the stock, assume any liability to the creditors of the corporation.                                           p. 262

An executory contract which is not merely *ultra vires,* but which is contrary to law or public policy will not be enforced.
                                                          p. 259

The subscribers to stock who at the time had full knowledge of the conditions which would make the issue of the stock illegal, are not estopped from setting up such illegality, as a defense to a suit on the subscription to the stock.      p. 262

*Decided June 12th, 1912.*

Appeal from the Superior Court of Baltimore City (GORTER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Clarence A. Tucker* and *Joseph N. Ulman* (with whom were *Samuel J. Harmon, Charles H. Knapp* and *Edgar J. Bernheimer* on the brief), for the appellant.

*Charles Markell* and *Edgar H. Gans,* for the appellee.

URNER, J., delivered the opinion of the Court.

This is an action by a New York corporation to recover from the defendant upon his subscription for certain shares of its capital stock, and the defense is that the plaintiff is unable to perform its part of the contract without violating the law under which it was created.

It is alleged in the declaration that Gustav Eggena, being the sole agent for the sale and delivery in the United States of the ales, stouts and other products of the establishment of Samuel Allsopp and Sons, Limited, of England, proposed to procure a new contract for the agency and have it made assignable to a corporation to be organized under the laws of New York. It is averred that $150,000 of the preferred stock of the projected corporation was offered for subscription at its par value of $100 per share, and the defendant subscribed for one hundred and fifty shares under an undated agreement between Eggena and the defendant and other subscribers providing, so far as it need be stated, that the company be organized with an authorized capital of $175,000 of seven per cent. cumulative non-voting preferred stock, and $175,000 of common stock, that the proceeds of the preferred stock offered for sale should be paid over to the corporation for the purposes of its business, that each of the subscribers should receive in addition to the preferred stock covered by his subscription fifty per cent. of the amount in common stock, that payments for the stock should be made to the Trust Company of America in New York City and upon the organization of the corporation certificates for its preferred and common stock should be issued to the Trust Company for delivery to the respective subscribers upon the completion of their payments under the terms of the agreement, that when the corporation should be formed and the further agency obtained, and in the event that a minimum of $75,000 of the preferred stock was subscribed for, Eggena should transfer the agency to the corporation under an agreement between the company and himself for its purchase. The

subscriptions actually obtained equalled but did not exceed the minimum amount of $75,000, fixed by the agreement.

The declaration then sets forth a later agreement between the same parties, dated October 1, 1907, which recited * * * that Eggena had then procured a contract from Allsopp and Sons, Limited, to constitute the proposed corporation the exclusive agent in the United States for the ales, stouts and other products referred to, and had performed all the conditions for the organization of the corporation prescribed by the prior agreement, and provided that the subscribers should pay to the Trust Company of America twenty per cent. of the amount of their subscriptions on or before October 31, 1907, the remaining amounts to be paid as previously stipulated. It is alleged that Eggenga thereupon organized the corporation as the Trent Import Company, the plaintiff in this suit, and that on October 25, 1907, the plaintiff and defendant entered into an agreement, in which the other subscribers and Eggena also joined, further modifying the agreement of subscription. The last dated agreement stated that the Trent Import Company had organized in accordance with the original agreement as later modified, that Eggena vested in the company the agency contract in question, and had performed·all of his other agreements in the premises, except the delivery to the Trust Company of the preferred and common stock which that company was to deliver to the subscribers, and that the Trent Import Company had ratified and accepted all of the provisions of the two preceding agreements and had authorized the issuance of its capital stock accordingly. It then provided that each of the subscribers should on or before October 31, 1907, pay to the Trent Import Company, instead of the Trust Company, twenty per cent. of their subscriptions, and that upon such payment the plaintiff corporation should issue to each subscriber making ·the payment preferred stock of the company at par in the amount paid and· fifty per cent. of the amount in common stock, and that upon payment of the succeeding calls by the

directors corresponding amounts of preferred and common stock should be issued.

The declaration concludes with the allegation that the plaintiff had performed all the conditions on its part provided in the agreement as finally modified, but the defendant failed and refused to make the payments when due.  There were further counts charging separately the failure and refusal of the defendant to pay the second and later calls, he having in fact duly made the first twenty per cent. payment of $3,000 on his subscription.

These allegations were met by a plea which avers among other things that the plaintiff corporation was formed subject to the stock corporation law of New York by which it is provided, in section 42, that: "No such corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purposes of such corporation.  Any corporation may purchase any property authorized by its certificate of incorporation, or necessary for the use or lawful purposes of such corporation, and may issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be full paid stock and not liable to any further call, neither shall the holder thereof be liable for any further payments under any of the provisions of this Act; and in the absence of fraud in the transaction the judgment of the directors as to the value of the property purchased shall be conclusive."  The plea then proceeds to charge that the plaintiff corporation was promoted and organized solely by Gustav Eggena and other persons associated with and acting for him and under his control, and that at the times of issuing or authorizing the issue of stock as mentioned in the declaration the directors of the corporation were persons acting in the interest and under the control of Eggena, and that the plaintiff corporation has never had under its ownership or control, so as to be able to issue or cause to be issued to the defendant, in performance of the subscription contract, any shares of its common stock for which the par value has at any time been paid in money

or in labor done, or property received, either of an actual value equal to not less than par, or at a valuation not less than par made in good faith by the directors of the corporation, but that all the common stock proposed to be issued to the defendant under the contract has been, or will be attempted to be issued either for no consideration whatever or else for alleged labor or property at a valuation by the corporation or its directors not fixed in good faith, but known by the corporation and its directors to be excessive and beyond any fair valuation of such labor or property.

A demurrer to the plea having been overruled the plaintiff filed a replication alleging that all the shares of common stock which the defendant was to receive under the contract upon payment for the preferred stock mentioned in the subscription were a part of the common stock which had been issued by the plaintiff corporation for property or services or both at a valuation fixed in good faith by the directors of the plaintiff equal to the full par value of the stock.

The pleadings thus led to the issue whether the corporation had received for the common stock, which it was to deliver under the agreement to the defendant, property or services really worth the par value of the stock or so valued by the directors in good faith. This was made the determinative issue of fact in the case upon the theory, which the Court adopted and upon which it overruled the demurrer to the plea, that unless the common stock intended for the defendant represents, actually or in the *bona fide* determination of the directors, value received by the corporation equal to the par value of the stock, the contract of subscription is illegal and unenforceable.

In the course of the trial it was proved that the whole of the common stock of the company, and one thousand shares of its preferred stock had been issued to Eggena by the corporation as the purchase price of the agency mentioned in the subscription agreement. This was in pursuance of a contract in writing between the corporation and Eggena, dated October 25, 1907, which provided that the stock thus issued

should be deemed full paid and non-assessable. There was a provision, however, that seven hundred and fifty shares of the preferred stock should be re-transferred by Eggena to the company as its absolute property for the purpose of raising money for working capital. It was thus established as a fact that the common stock which the company agreed on October 25, 1907, to issue to the defendant was a part of that which it had already agreed to issue to Eggena as full paid stock in consideration of the transfer of the Allsopp agency.

The directors, with the exception of one who was returned *non est,* were summoned as witnesses in the case, and each one testified in effect that he had no knowledge of the value of the agency contract purchased by the company, and that he made no investigation to ascertain its value. There was evidence tending to show that the directors made the agreement with Eggena and authorized the issuance of preferred and common stock to him in pursuance of his proposal without discussing among themselves the value of the agency or the terms of the purchase. None of the directors who testified had invested any money in the stock of the corporation. All stated that they became directors at the request of Mr. Eggena, and we can have no doubt upon the record that they acted in the matter simply for his accommodation and without the exercise of any independent judgment.

The proof strongly tends to show that the agency contract was in fact valueless. It required the annual purchase by the company for a period of twenty years of Allsopp products in quantities which could not, according to the evidence, be marketed except at an expense that would probably absorb all the profits. The agency lapsed long before the trial as the result of the failure of the company to comply with its terms. It does not appear that the company ever received any payments of money on account of its capital stock except the twenty per cent. installment paid by the defendant.

The case was submitted to the jury under instructions proposed by both the plaintiff and defendant. Those granted at the instance of the plaintiff were to the general effect that

the verdict should depend upon a finding whether or not the common stock of the plaintiff corporation and one thousand shares of its preferred stock were issued for property or services or both, at a valuation not fixed in good faith by the directors of the company equal to the full par value of the stock, but fixed by them at a valuation known by them to be excessive and beyond any fair valuation of such labor or property. The instructions given at the request of the defendant prescribed as the basis for the plaintiff's recovery a finding either that the corporation received for the preferred and common stock issued to Eggena property and services which were in fact equal to the par value of the stock so issued, or were *bona fide* valued at that amount by the directors; and the absence of good faith in that connection was defined to be the issuance of the stock by the directors for property and services not worth its par amount, without an honest belief and determination that such property and services had the requisite value, or without any knowledge on the subject and in reckless disregard of their real worth. In order to pursue consistently the objection, raised primarily by the demurrer, to the theory of the defense, an exception was reserved by the plaintiff to the granting of the instructions proposed by the defendant, but it is not suggested that they are otherwise objectionable. The verdict and judgment being in the defendant's favor the plaintiff has appealed.

The first inquiry is whether the law of New York, under which the plaintiff was incorporated, prohibits the issuance of its stock for property or services at less than the par value. In our judgment this is the clear effect of the statute quoted in the plea and offered in evidence. The rational construction of a provision that stock may be issued in the purchase of property to the amount of its value, and that the stock so issued shall be regarded as full paid, is that the value of the property is to be estimated with respect to the par value of the stock. This view is in accord with the interpretation which the Court of Appeals of New York has placed upon a practically identical provision in a preexisting statute. In

*Gamble* v. *Q. C. W. Co.*, 123 N. Y. 106, the opinion of the Court by Judge Peckham is in part as follows: "By section 2 of Chapter 40 of the laws of 1848 the trustees of a manufacturing corporation, founded under the Act, are empowered to purchase property necessary for their business, and to issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be declared and taken to be full paid stock, and not liable to any further calls. We think this language must mean that the amount of the nominal or par value of the stock must be put against the value of the property purchased * * * Considering the fact that the stock must be issued at par, the company must, therefore, receive in money or property the equivalent of its face or par value, and unless it does so receive it, the issue is illegal."

It was held in *Knowlton* v. *Congress and Empire Spring Company*, 57 N. Y. 518, that a subscription to stock to be issued as full paid upon payment of eighty per cent. of its par value was illegal because in violation of the spirit and policy of the Act of 1848. The plaintiff was suing in that case to recover a payment made on account of his subscription, and was denied recovery on the ground that the contract was to be regarded as executed to the extent of the payment. This conclusion was based upon the principle that the law leaves the parties to an illegal contract in the position in which they are found. In applying the principle to the case before it and holding that the plaintiff could not recover the amount he had paid the Court observed that the company could not have recovered from him the unpaid balance of his subscription.

The same case was considered by the Supreme Court of the United States on appeal from the Circuit Court of the United States for the Northern District of New York, to which it had been removed from the New York Court where it originated, and it was held that the payment on account of the stock subscription did not render it so far executed as to prevent recovery of the amount paid. The decision of the Court of Appeals of New York was referred to as having

been to the effect that the plan for issuing the stock was in violation of the law of that State and therefore void, and it was upon this theory that the Supreme Court held that the partial payment made by the plaintiff was recoverable. *Congress and Empire Spring Company* v. *Knowlton,* 103 U. S. 49.

The Court of Errors and Appeals of New Jersey has placed the same construction upon similar legislation in that State. It is provided by section 48 of the Corporation Acts of New Jersey that "nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this Act, except as hereinafter provided in case of the purchase of property;" and section 49 permits the corporation to purchase property necessary for its business and "issue stock to the amount of the value thereof in payment therefor," the stock so issued to be full paid and not liable to further call. In *Donald* v. *American Smelting Company,* 62 N. J. Eq. 729 (48 Atl. 772), it is said: "The meaning of section 48 is not questionable: The money must be equal to the face value of the stock. The language of section 49 is even more explicit: The corporation may issue stock to the amount of the value of the property. The value of the property in the one case, just as the value of the money in the other, must at least equal the face value of the stock."

In the case before us the specific question is whether the plaintiff corporation can legally issue to the defendant common stock for which no money has been or will be received by it from any source and which represents no return to the company in property or labor equal in fact to the par value of the stock or so estimated in good faith by the directors. We think it is clear that such an issue of stock to the defendant cannot be made by the corporation without a violation of the law to which it is subject.

The contention is made, however, that the defendant is estopped to avail himself of this defense because of his participation in the agreements set forth in the declaration,

which are said to plainly indicate that Eggena was to have all the stock except $150,000 of the preferred, in consideration of the assignment of his agency contract to the company. It is urged that the defendant thus consented to the issuance of the stock upon this basis and that, regardless of the real value of the contract assigned, he is not entitled to allege the illegality of the transaction in opposition to a suit on his subscription. The agreements to which the defendant was a party do not mention the terms upon which the company was to acquire the agency. It is merely provided that the agency contract should be assigned under an agreement for its purchase to be effected by Eggena with the corporation when organized. But even if the defendant had full knowledge, at the time he subscribed, of the conditions which make the projected issuance of the common stock illegal, there can be no doubt as to his right to resist the effort to complete the undertaking. There is a distinct ruling in support of such a right in the case of *Knowlton* v. *Congress and Empire Spring Company*, 57 N. Y., *supra*, and this Court also has held that an executory corporate contract which is not merely *ultra vires*, but contrary to law or public policy will not be enforced. *Schaun* v. *Brandt*, 116 Md. 560 (82 Atl. Rep. 551); *Maryland Trust Company* v. *Mechanics' Bank*, 102 Md. 608; *Burke* v. *Smith*, 111 Md. 624; *Emerson* v. *Townsend*, 73 Md. 224; *Black* v. *Bank of Westminster*, 96 Md. 399.

But the defendant's contract of subscription is said to be perfectly valid on its face and open to objection, if at all, upon the sole ground that the common stock which was to be given as a bonus with the preferred had been issued for property not taken at a fair valuation, and it is urged that such an objection, being concerned with the legality of an executed contract between the company and Eggena, is not available to the defendant in this suit. This contention would have greater force if the defendant were being sued by Eggena upon a contract to which they were the only parties, but the suit is by the corporation itself upon a sub-

scription which provides that it shall issue to the defendant
the shares of common stock which were to accompany the
preferred stock for which he subscribed.   While the agree-
ments doubtless contemplated the issuance of common stock
to Eggena in payment for the agency contract, they made
contemporaneous provision that a part of the same stock
should be issued by the company to the defendant.   This
necessarily involved either the retention by the company of
the common stock intended for the subscribers to the pre-
ferred stock, or a re-transfer by Eggena to the company for
that purpose.   In either event the company is in the position
of suing upon an agreement which cannot be fully performed
on its part except in connection with the issuance by it of
common stock upon terms forbidden by law.   This condition
differentiates the present case from that of *Marles Carved
Moulding Co.* v. *Stulb,* 215 Pa. St. 91, cited by the appel-
lant.   In that case the defense of a subscriber that certain
shares, which he was to receive in conjunction with those for
which he had subscribed, were to be illegally issued as a
bonus was disallowed, but it was pointed out that the stock
was to be transferred to the subscriber by a third party, to
whom it had been lawfully issued, and not by the corpora-
tion.

Another contention is that even if the agreement in suit is
illegal in so far as it provides for the issuance of common
stock to the defendant, it is nevertheless valid and enforce-
able with respect to the subscription for the preferred stock
for which the defendant agreed to pay in cash at par.   The
decision upon which the appellant mainly relies to support
this position is *Morrow* v. *Iron and Steel Company,* 87 Tenn.
262.   There a subscriber for stock, after having given his
promissory note in settlement and after having acted as a
stockholder and director of the corporation, filed a bill in
equity for the specific enforcement of an agreement that the
corporation, after being formed, should issue bonds as a
bonus to the purchasers of its stock.   The bill proposed also,
as alternative redress, that the plaintiff be relieved of his

subscription.  It was held that the plaintiff's agreement clearly contemplated that his subscription should be paid before the bonds were issued, as it appeared that the bonds were to be secured by mortgage of the company's plant and this could be done only after the capital stock had been paid in and invested in the property to be mortgaged.  The Court accordingly refused to relieve the plaintiff from his liability on the subscription notwithstanding the illegality of the condition relating to the subsequent delivery of the bonds.  In the case before us there is no ground upon which we would be justified in holding that the provisions for the issuance of the preferred and common stock are divisible. The agreement is explicit in stipulating that the two classes of stock should be issued simultaneously, and it is obvious that the issuance of the common stock is an essential and inseparable part of the company's obligation under the subscription agreement it is seeking to enforce in this suit. The general rule, as stated in 9 *Cyc.* 566, and in support of which numerous decisions are there cited, is that "if there are several considerations for one promise, some of which are legal and others illegal, the promise is wholly void, as it is impossible to say which part or which one of the considerations induced the promise."

The appellant submits as its final proposition that the defense relied upon is not available in a suit at law in this jurisdiction, for the reason that it involves an inquiry into the value of the property and services for which the common stock was to be issued and requires a determination as to whether or not the directors acted in good faith in their valuation of the agency contract.  It is insisted that the effect of the defense, if successful, is to set aside the executed agreement between Eggena and the company for the assignment of the agency, and it is urged that such a result can be accomplished only in an equity proceeding for that specific purpose to which the corporation and Eggena should be parties defendant.  This contention is supple-

mented by the suggestion that as such a proceeding is concerned with the internal· affairs of a foreign corporation it is not maintainable in this State. We are unable to accept the theory of these propositions. The precise question here is whether a foreign corporation is entitled to recover, in a suit which it has brought in a Maryland Court, upon an agreement for the issuance of its stock which is prohibited by the law of the State in which it came into existence. There can be no doubt as to the right of the defendant *in such an action* to show the illegality of the contract upon which he is sought to be charged with liability, and in our opinion the defense upon that ground in the present case was properly allowed.

The argument included a discussion of the question whether the defendant, if required to comply with the terms of his subscription, would incur liability to creditors of the corporation to the par amount of the common stock he would receive as bonus under the agreement. This question arose from a suggestion of such a liability as an additional reason why the defendant is justified in refusing to complete the transaction. We do not find it necessary to discuss this point, because if it be assumed that the defendant would sustain no liability to creditors of the corporation on account of his acquisition of the stock as full-paid and non-assessable, yet this consideration could furnish no support to the effort of the corporation to enforce its own executory contract as against such a defense as the one here interposed.

There was no error in the rulings presented for review, and the judgment will be affirmed.

*Judgment affirmed, with costs, including costs of supplemental record.*