# FREDERICK BUCHER

## *vs.*

## FEDERAL BASEBALL CLUB OF BALTIMORE, INCORPORATED.

*Stock*: *subscription to——; fraud; mere expression of opinion or*
*expectation, not——; bonus stock, not issued by corporation,*
*but contributed by third parties; underwriting agree-*
*ment; reservation of right to pay for and take up*
*his stock.   Interest: when question for jury.*
*Appeals: severable errors in ver-*
*dict; correction.*

Where common stock, which by a subscription agreement is given to each subscriber to the preferred stock of the corporaion, is not the unissued stock of the corporation, given by it as a bonus to the preferred stockholders, but is stock owned and contributed by the directors of the corporation, the subscription is valid, even in States where the laws prohibit the issue of bonus stock by the corporation itself.                     pp. 638-639

Where one of the underwriters to an agreement for subscriptions to stock reserves the right to pay for and take up the stock he subscribed for at any time before a certain date, before the underwriting syndicate was to be dissolved, it was: *Held,* that it did not increase the responsibility of the other subscribers and did not invalidate the contract of the others.   p. 640

The statement by the secretary of a baseball club, that the gate receipts would be sufficient to relieve from liability any subscriber to an underwriting agreement for the taking of the stock, is to be taken as only an expression of opinion or expectation, and is insufficient to form the basis of a charge of fraud and deception, so as to invalidate the subscriptions.   pp. 641-642

Excepting in cases where interest is recoverable as of right, such as on bonds, contracts in writing to pay money on a day certain, etc., the question of interest should be left to the jury.

pp. 643-644

In a suit for the payment of a subscription to stock, it should be left to the jury as to whether interest should be added to the principal sum claimed.                    p. 644

Where an instruction directed the allowance of interest, where it should properly have been left for the jury, and from the amount of the verdict it is clear that the jury allowed the principal claimed with interest from the time the claim was payable to the time of trial, the judgment, under section 22A of Article 5 of the Code, was reversed, to the extent that it included interest, and affirmed as to the remaining amount.

p. 644

*Decided June 26th, 1917.*

Appeal from the Superior Court of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Wm. P. Lyons* and *Wm. G. Towers,* for the appellant.

*L. Edwin Goldman* and *Frank B. Ober* (with whom were *Ritchie & Janney* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

An underwriting agreement between the Federal Baseball Club of Baltimore, Incorporated, and a number of persons, including the appellant, recited that the corporation had then outstanding capital stock to the amount of $150,000 preferred and $150,000 common stock, and was desirous of raising money for use as working capital for the ensuing year, and proposed to obtain the necessary funds by increasing its capital stock to $250,000 preferred and $250,000 common

stock, the preferred to be offered to the stockholders at par, with such bonus, if any, of common stock as might be determined by the board of directors, but that as the time was deemed unfavorable for offering the new stock to the stockholders and the public, the corporation had requested the other parties to the agreement to underwrite the stock on the terms thereinafter prescribed, the underwriting when completed to the amount of $25,000 to be effective and binding and to be used by the corporation for the purpose of borrowing money thereon to the extent of its requirements. The agreement then provided that each of the underwriters thereby subscribed for the number of shares of the preferred stock of the corporation set opposite his name and obligated himself to pay therefor at the rate of ten dollars per share as and when payment should be called for by notice in writing from the treasurer of the corporation, but such calls to be made in no event prior to July 1st, 1915. It was further agreed that the underwriting might be hypothecated by the corporation with any bank or trust company. There was a provision that the baseball club should have the exclusive right to offer the stock of its stockholders and the public "until the dissolution of the underwriting on July 1, 1915," and the agreement then proceeded as follows: "And in consideration of such services rendered by the subscribers, said Federal Baseball Club of Baltimore, Incorporated, does hereby agree that upon the sale of said stock to the amount subscribed for hereunder to its stockholders or to the public, said subscription obligations shall be returned and the said underwriters shall each receive as compensation for their said services fifty per cent. of the par amount of their subscriptions herein in common stock of the corporation, the same having been contributed for this purpose by the directors; and that all sales of stock effected as aforesaid shall be applied ratably on **said subscriptions**." The appellant was one of twenty-five underwriters, each of whom signed the agreement as a subscriber for $1,000 of the preferred stock at its par value.

By the hypothecation of the underwriting with the Baltimore Trust Company a loan was obtained by the baseball club to the amount of $25,000. The efforts of the club to dispose of the new issue of preferred stock resulted in the sale of only one hundred and twenty-nine shares, apart from those taken by underwriters, two of whom paid for and received the full amount for which they subscribed. The other twenty-three subscriptions were reduced ratably, as provided by the agreement, as the result of the sales of stock made by the club subsequent to the underwriting. As the amount realized from such sales at par was $1290, the obligation of each of the subscribers was reduced from $1,000 to $943.92, and each of them was notified in writing by the treasurer of the club to pay that sum on August 15, 1915, in pursuance of a resolution to that effect passed by the board of directors. The payment thus requested of the appellant having been refused, he was sued in this action and a judgment, on the verdict of a jury, was recovered against him for the amount claimed, with interest.

There are seven bills of exception in the record. The first exception was taken to the admission in evidence of the underwriting contract. It is contended that the agreement is invalid and inadmissible because of its provision that the underwriters should receive, as compensaton for their services, common stock of the baseball club to the amount of fifty per cent. of their subscriptions for its preferred stock. This objection is founded on the theory that the agreement provided for the issuance of bonus stock to the subscribers, in the amounts specified, and that such an undertaking is illegal and renders the subscription void and unenforceable. The principle applied in the case of *Trent Import Co.* v. *Wheelwright,* 118 Md. 249, is invoked in support of this contention. In the case cited a subscription for preferred stock, with a fifty per cent. bonus of common stock, in a New York corporation, was held to be invalid under the laws of that State. It is urged that the law of Maryland also prohibits such contracts upon the part of corporations created under

our statutes.    Whether this view is correct in its general
theory is a question which need not now be decided, because
if the principle asserted be assumed to be operative in this
State, we are satisfied that it does not apply to the special
terms of the agreement involved in this suit.

The common stock to be received by the subscribers for
preferred stock, under the present contract, was not to be
issued by the corporation and was not intended to be a bonus.
It was contributed by the members of the board of directors
as a compensation to the underwriters for their services in
that capacity.    By the terms of the agreement they were to
receive the stated amounts of common stock only in the event
that the corporation succeeded in selling the preferred stock
for which they had subscribed.    If that contingency had act-
ually occurred, the subscription obligations were to have been
returned and the underwriting dissolved.    The subscribers
would then have been relieved of the liability they had as-
sumed, and would have received no preferred stock under the
agreement, but would have been entitled to the common stock
contributed by the directors as compensation for the service
rendered in the underwriting transaction.    The argument for
the appellant on this point proceeds upon the theory that the
contribution of the common stock by the directors, to which
the agreement referred, in fact represented the direct issu-
ance of the stock by the corporation to the underwriters.    We
do not feel at liberty to make such an assumption.    It is not
in accord with the meaning of the language used in the agree-
ment, and we have no reason to assume that the statements
of fact therein made are incorrect in any particular.    When
the agreement was executed $150,000 of common stock had
previously been issued, and it was some of this stock appar-
ently that was owned and contributed by the directors.    If
it had been intended to compensate the underwriters with
some of the unissued common stock of the corporation, that
purpose would have been expressed by a simple provision for
the *issuance* of the stock for that purpose.    There would have

been no occasion to recite the *contribution* of the stock from
the source indicated.

· The opinion in *Trent Import Co.* v. *Wheelwright, supra,*
distinguished the ruling in that case from the decision in
*Marles Carved Moulding Co.* v. *Stulb,* 215 Pa. St. 91, where
"the defense of a subscriber that certain shares, which he was
to receive in conjunction with those for which he had sub-
scribed, were to be illegally issued as a bonus, was dis-
allowed, but it was pointed out that the stock was to be trans-
ferred to the subscriber by a third party, to whom it had
been lawfully issued, and not by the corporation." There is
nothing in this record to show that the stock contributed by
the directors for the compensation of the underwriters, had
not been legally issued, and we have no reason therefore to
adopt such a theory for the purpose of exempting the appel-
lant from his contractual obligation.

The admissibility of the subscription agreement was dis-
puted also on the ground that one of the subscribers, who
signed after the appellant, made a written reservation of the
privilege of withdrawing any part of the $1000 of preferred
stock he was underwriting, "together with the bonus stock"
at any time prior to July 1st, 1915. It is argued that a sub-
scription thus qualified is not in accordance with the agree-
ment and hence is not to be considered as meeting in part
the provision that the obligation should become effective when
the underwriting was completed to the amount of $25,000.
With this subscription thus eliminated, the theory is that
underwriting to the prescribed amount has never been pro-
cured and that the agreement has therefore never become
effective. The reservation by a subscriber of the privilege
of paying for his stock before the time when the underwrit-
ing was intended to be dissolved, did not relieve him of his
equal obligation under the contract, but gave him the option
to meet and satisfy his liability before it matured. The exer-
cise of such an option could not increase the responsibility
of the other subscribing parties. It could only have the effect
of reducing the total of the amounts for which they were

severally bound. The right was reserved by the corporation to sell, prior to July 1, 1915, to the stockholders or the public, any or all of the stock underwritten by the agreement, and in view of the provision to that effect, and of the evident design that the stock should be sold if posssible, the option in question, appended by one of the subscribers, would appear to have been superfluous. It was certainly immaterial so far as the practical rights and interests of the other underwriters were concerned.

The second, seventh, eighth, ninth and tenth exceptions refer to offers of testimony by the appellant as a witness in his own behalf to prove that his subscription was obtained by fraud. It was admitted by the appellant that he signed the paper and entered "$1000" with his own hand in the column headed "Amount at par value of preferred stock subscribed for," but he desired to testify in substance that he was induced to sign by the representation and assurance of the appellee's secretary that no liability would be thereby incurred by the appellant, and that the only object of the paper was to tide the baseball club over the first game of the season, after which it would have enough money for its needs, and that he signed the paper without reading it and in reliance upon the secretary's statement as to the purpose for which it was to be used. The trial court ruled in effect that the testimony thus proffered was immaterial and without probative force upon the issue of fraud to which it was directed. With this view we fully agree. By the appellant's admission that he understood the paper he signed was to be used for the purpose of raising money and that he personally wrote after his signature the amount of his subscription, it is settled beyond question that he was not misled as to the fact and measure of the liability he was thereby assuming. In view of his conceded knowledge as to the object for which his signature was being obtained, he is not entitled to impeach for fraud the obligation into which he entered merely because he did not read the paper and was assured that the corporation to which he was lending his credit would realize enough

·money· from its operations to repay the loan he was thus aiding it to procure. The statement by the secretary of the baseball·club that its gate receipts would be sufficient to meet its requirements and thus relieve the appellant of any liability ·on account of his signature, was not a representation of an existing· fact, but only an expression of opinion or expectation upon which he was not justified in placing reliance and which is an insufficient basis for a charge of fraud and deception. *Robertson* v. *Parks,* 76 Md. 132; *Boulden* v. *Stilwell,* 100 Md. 552; *Hall* v. *Brown,* 126 Md. 173. The case ·of *McGrath* v. *Peterson,* 127 Md. 412, cited by the appellant was widely different in its facts from the one now under ·review.

The third and fourth exceptions were taken to the admission of proof that the underwriting agreement was hypothecated by the baseball club for a loan of $25,000, and the fifth and· sixth exceptions opposed the introduction of evidence as to sales of stock by the corporation, under the agreement, prior to the time when the subscribers were called on for payment. There was no error in these rulings.

. The eleventh and twelfth exceptions refer to the exclusion of testimony by the appellant as to statements made to him by the secretary of the baseball club after the notice for payment was issued. The subsequent representations thus sought to be proven were immaterial under the issues joined, as was also the knowledge then possessed by the appellant and offered to be proven under the thirteenth exception, as to the appellee's financial condition.

An offer to prove, as shown by the fourteenth bill of exception, that the secretary of the club, who was also one of the underwriters, had not as yet paid his subscription, was properly refused, as that fact, if proven, would have been clearly immaterial.

The only remaining bill of exceptions relates to the instructions. Those granted at the request of the plaintiff are said to be objectionable because they disregarded the issue of fraud raised by the pleadings. We find no evidence in

the record legally sufficient to warrant the submission of that question to the jury. It was testified by the defendant that when he was asked to sign the agreement he was told by the secretary that the baseball club had made $8,000 the previous year but had to advance that sum to the players. The secretary was then called as a witness by the defendant and stated that he had no exact knowledge on the subject, but he believed that the club had lost a little money the preceding year. This witness, upon whom the defendant relied for the rather indefinite proof just mentioned, testified also that he made no statement to the defendant on the occasion of his signing the subscription, as to the club's earnings the year before, except that it had not prospered and hence found it necessary to raise some money by the proposed underwriting. As, according to the defendant's own testimony, he knew that the profits of the former season had been expended, and that the club was in actual need of funds to continue its operations, we can have no doubt as to the legal insufficiency of the evidence offered in support of the issue of fraud. The defendant's prayers were properly refused. They are based upon theories which we have discussed in ruling upon other exceptions.

One of the instructions granted at the plaintiff's instance, was to the effect that if the jury should find in favor of the plaintiff, their verdict should be for the amount due on the defendant's subscription, with interest from August 15, 1915, that being the date designated in the call for payment. Objection is made to this instruction because it directs the allowance of interest from the date mentioned, instead of leaving that question to the jury's discretion. It was held in the case of *Frank v. Morrison,* 55 Md. 408, that "a subscription for stock in a corporation, to be paid for in instalments, is not such a contract as falls within the class of those on which interest is recoverable as of right." In thus ruling the Court said that "while there are cases in which interest is recoverable as of right, such as bonds, contracts in writing to pay money on a day certain, such as bills of exchange or

promissory notes, or contracts for the payment of interest, or where the money claimed has been actually used, yet with such exceptions it has long been the settled practice of the courts of this State to refer the question of interest entirely to the jury, who may allow it or not in the shape of damages, according to the equity and justice appearing between the parties on a consideration of all the circumstances of the particular case as disclosed at the trial." By virtue of this rule of practice, a granted prayer in the case cited *directing* the allowance of interest was held to be erroneous. The same principle applies to the instruction now under consideration. It should properly have left to the jury's discretion the question as to whether interest should be added to the principal sum claimed.

Before the entry of the appeal an offer was made by the plaintiff to the defendant, as shown by the record, to waive the interest allowed by the jury and to accept settlement on the basis of a verdict and judgment for $943.92, being the amount due on the subscription, without interest. This offer does not appear to have been accepted. The verdict was for the sum of $1,011.15, which is evidently made up of the principal debt and interest thereon from the time it was payable to the date of the trial. There is no difficulty, therefore, in separating the interest from the total amount of the judgment. By Section 22A of Article 5 of the Code, as enacted by Chapter 248 of the Acts of 1914, it is provided: "If it appears to the Court of Appeals that a reversible error affects a severable item or part only of the matters in controversy, the Court may direct final judgment as to the remaining parts or items thereof, and may direct a new trial as to the said severable part or item only." In pursuance of this provision the judgment will be reversed only to the extent of the interest item it includes, as to which a new trial will be awarded, and as to the remaining amount of the judgment $943.92, it will be affirmed and directed to be finally entered.

> *Judgment affirmed in part and reversed in part, and new trial awarded, the appellant to pay the costs.*