GEORGE L. HOPPER AND JACKSON W. MASLIN,
ADMINISTRATORS OF THE ESTATE OF PETER L. HOPPER,
DECEASED, AND MARGARET K. SPENCER AND
HENRY A. OSBORN, JR., ADMINISTRATORS OF THE
ESTATE OF JOHN N. SPENCER, DECEASED,

*vs.*

ISRAEL B. BRODIE, RECEIVER OF THE ATLANTIC ICE
COMPANY.

*Corporations: issue of stock for services; loan of money not
sufficient consideration. Laches: when no
prejudice caused.*

The loan of money to a corporation does not constitute such
services as to authorize an issue of the corporation's capital
stock in payment therefor.                    p. 303

Laches is such a neglect or omission to assert a right as,
taken in conjunction with lapse of time more or less great and
other circumstances, to cause prejudice to an adverse party, and
operates as a bar in a court of equity.                    p. 304

But the principle of the defense will not be applied when
the delay does not appear to have prejudiced the adverse party.
                                                            p. 304

*Decided April 8th, 1919.*

Appeal from the Circuit Court for Baltimore City.
(AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS and URNER, JJ.

*John L. G. Lee* and *Stevenson A. Williams,* for the appellants.

*S. S. Field* and *Richard S. Culbreth,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the receiver of the Atlantic Ice Company against certain stockholders of that company to recover the amount due on their stock.

The record is an unusually large one,—containing more than four hundred printed pages—but a large part of it has but little bearing on the important question to be determined on this appeal. The material facts in the case are that in 1909 a number of holders of certificates issued by the receiver of the Baltimore Plate Ice Company, with the view of protecting their interests, formed an association for the purpose of bidding for the property of that company at a sale to be made by the receiver on the 11th of November, 1909, and Peter L. Hopper and Edwin M. Lilly were appointed a committee to attend the sale.and bid for the property. The committee purchased the property for $34,500.00, and made the cash payment thereon of $5,000.00 required by the terms of the sale. $3,000.00 of this cash payment of $5,000.00 was contributed by Peter L. Hopper and John N. Spencer; $100 by Daniel H. Doyle; $500 by George E. Plitt; $700 by Edwin M. Lilly; $500 by Burton G. Buck; $100 by Herman Wagner and $100 by David Lescallett. On the 26th of February, 1910, the members of the association incorporated the Atlantic Ice Company, with a capital stock of $25,000.00, "divided into twenty-five hundred shares of the par value of ten dollars each," and on the 22nd of March, 1910, they entered into the following agreement:

> "This Agreement, made this 22nd day of March, 1910, by and between John B. Spencer, P. L. Hopper, Edwin M. Lilly, Samuel G. Messerschmidt, George Plitt, Herman Wagner, David Lescallett, Alexander L. Tinsley, Burton G. Buck, Daniel H. Doyle, Samuel

Adler and Frederick M. Supplee, or such of them as shall join in this agreement, parties of the first part, and The Atlantic Ice Company, party of the second part.

"Whereas, The parties of the first part, being holders of certificates issued by Edgar Ziellian, receiver of the Baltimore Plate Ice Company, did on or about the ―― day of November, 1909, enter into an agreement and form an association to protect their respective interests in the property and assets of said company, by virtue of which agreement, through their committee, Edwin M. Lilly and P. L. Hopper, they did upon the 11th day of November, 1909, become the purchasers of said property for the sum of $34,500.00, which sale has been ratified by Circuit Court No. 2 of Baltimore City, as will appear by reference to the proceedings had in the case of Bernard Makover vs. The Baltimore Plate Ice Company of record in said court.

"And whereas, The said parties of the first part for the more convenient management of said property have formed The Atlantic Ice Company, a corporation, to take over all their respective right, title and interest therein, as well as their interest in the receivers' certificates which they have deposited with Edwin M. Lilly, John N. Spencer and P. L. Hopper, with the intent that the proceeds thereof shall be applied to the purchase money and carrying charges of said property.

"And whereas, The said parties of the first part have agreed in lieu of the amount which may be realized on said certificates and of the amounts which they have heretofore or may hereafter contribute to said purchase money and charges to accept shares of the common stock of the said The Atlantic Ice Company equal to the proportion which their respective contributions bear to the whole amount of said purchase money and charges.

"Now This Agreement Witnesseth, That in consideration of the premises and the sum of one dollar the undersigned parties of the first part do respectively grant and assign to the said The Atlantic Ice Com-

pany all their joint and several interests in the prop-
erty and receivers' certificates aforesaid and they
hereby direct the committee holding said certificates to
deliver them to said company, and they further direct
Edwin M. Lilly and P. L. Hopper, the purchasing com-
mittee aforesaid, to convey to said company said prop-
erty free and discharged of any claim or interest which
they or either of them might have therein. And for
their said contributions for said purchase money, in-
cluding the proceeds of their said certificates, they re-
spectively agree to accept shares of common stock of
said company of an amount equal to the proportion
which their respective contributions bear to the whole
amount of the purchase money and carrying charges
aforesaid."

On the date of the above agreement the stockholders of the
Atlantic Ice Company held their first meeting, and the min-
utes of that meeting are as follows:

"Baltimore City, Md., 8 o'clock P. M.,
"March 22nd, 1910. At the office of
"Buck Brothers in South Street.

"This being the first meeting of the stockholders of
The Atlantic Ice Company, the following named stock-
holders were present: Messrs. P. L. Hopper, John N.
Spencer, Edwin M. Lilly, Samuel G. Messerschmidt,
George E. Plitt, Burton G. Buck, Alexander L. Tins-
ley, David Lescallett, Daniel H. Doyle, and by proxy
held by P. L. Hopper the following: Herman Wag-
ner, Frederick M. Supplee and Samuel Adler, repre-
senting all the outstanding shares of the capital stock
of this company.

"Mr. Hopper called the meeting to order and Mr.
Lilly was appointed secretary.

"Mr. Doyle offered the following resolution:

" 'Whereas, by agreement made the 22nd day of
March, 1910, the associated holders of certificates is-
sued by Edgar Zielian, Receiver of the Baltimore
Plate Ice Company, have agreed to accept in lieu of
the amounts which they have heretofore or may here-

after contribute to the purchase money of the property of the said company and the carrying charges thereof, shares of the common stock of The Atlantic Ice Company equal to the proportion which their respective contributions bear to the whole amount of said purchase money and charges. Be it therefore resolved that the officers of The Atlantic Ice Company issue to said certificate holders respectively certificates for shares of common stock of said company in proportion to their respective contributions as the same shall be paid in.'

"On motion the resolution was unanimously adopted.

"Mr. Buck offered the following resolution:

" 'Whereas, John N. Spencer and Peter L. Hopper have offered to lend this company for four months the sum of $20,000.00, less the discount thereon, upon its promissory notes, for and in consideration of a bonus of 1,351 shares of its capital stock; be it therefore resolved, that this company accept said loan upon the conditions aforesaid, and that the officers of the company issue to the said John N. Spencer and Peter L. Hopper its four promissory notes for $5,000.00 each at four months and also a certificate for 1,351 shares of its capital stock.'

"On motion to adopt the resolution the vote was as follows: Messrs. Spencer and Hopper not voting. Yeas: Messrs. Tinsley, Doyle, Lescallett, Plitt, Buck, Messerschmidt, Wagner, Supplee and Adler; Nay, Mr. Lilly. Those voting in the affirmative being a majority in interest of the stockholders who voted on the resolution and representing a majority of all the stock outstanding and entitled to vote, the resolution was declared adopted.

"On motion, the meeting was adjourned subject to call.

"E. M. Lilly, Secretary."

It appears from the memoranda in the minute book and from other evidence in the case that at that meeting of the stockholders Daniel H. Doyle voted six shares of stock, David

Lescallett six shares, George E. Plitt thirty-one shares, Burton G. Buck thirty-one shares, Herman Wagner six shares and Edwin M. Lilly forty-four shares, and it also appears from the minute book that at a meeting of the directors of the Atlantic Ice Company, held immediately after the first meeting of the stockholders, the following officers were elected: Peter L. Hopper, president; John N. Spencer, treasurer, and Edwin M. Lilly, secretary, and that the president and secretary were directed to execute four notes of the company for $5,000.00 each, at four months, to the order of John N. Spencer and P. L. Hopper, in accordance with the resolution of the stockholders, and that the president was requested to secure the necessary blank stock certificates, a seal and minute book for the use of the company. The minute book shows that in accordance with said resolution, the following stock was issued on the 4th of August, 1910: to John N. Spencer and Peter L. Hopper, 1,538 shares; to Edwin M. Lilly, forty-four shares; to George E. Plitt, thirty-one shares; to Burton G. Buck, thirty-one shares; to Daniel H. Doyle, six shares; David Lescallett, six shares, and to Herman Wagner, six shares. The number of shares issued to Hopper and Spencer included the 1,351 allowed as a bonus for the loan of $20,-000.00, and 187 shares representing their contribution to the cash payment for the property purchased from the receiver of the Baltimore Plate Ice Company, and the stock issued to the other stockholders represented their contribution to said cash payment. On the 15th of August, 1910, the following certificate was recorded among the charter records of Baltimore City:

"This is to certify that The Atlantic Ice Company has within thirty days prior to the date hereof issued 1,351 shares of its capital stock of the par value of ten dollars in payment for the following described services, to wit:

"In consideration and as a bonus for a loan of $20,000.00 upon its four promissory notes of $5,000.00 each.

"Witness the signatures of the President and Secretary of the Atlantic Ice Company this 15th day of August, 1910.

"P. L. Hopper, President.
"David Lescallett, Secretary Pro Tem.
"(Affidavit of John W. Spencer, treasurer of The Atlantic Ice Company, attached.)"

In May, 1910, the Atlantic Ice Company contracted with John B. Smithman for the repair of the gas engines in its plant and agreed to pay him for the work $7,000.00, in two payments of $3,500.00 each. The evidence shows that the holders of the receiver's certificates who purchased the property expected the receivers of the Baltimore Plate Ice Company to accept their certificates in part payment of the purchase money, and that because of the refusal of the receivers to do so, the Atlantic Ice Company, to whom the certificates were subsequently assigned, was compelled to borrow the money necessary to pay the purchase price, interest thereon, insurance, taxes, ground rent and other expenses on the property. Instead of realizing the full amount of the certificates, the Atlantic Ice Company ultimately received, in 1912, only a dividend of forty per cent., and the minutes of the meeting of the board of directors of the Atlantic Ice Company, held on the 16th of July contain the following reference to the dividend:

"The president reported that Messrs. Doyle, Plitt, Lilly, Tinsley, Buck, Supplee and Drennen desired to withdraw the dividends on the receivers' certificates heretofore assigned by them to this company upon which a dividend of 40% had been allowed in the settlement of the affairs of the Balto. Plate Ice Co., and that they had employed attorneys and were threatening proceedings against the company, which proceedings were without foundation, but would seriously affect the company's credit to its great disadvantage. It was therefore resolved that the persons above men-

tioned be allowed to withdraw the amount of the dividends declared upon their respective certificates.

"John N. Spencer, Secretary."

It appears that the parties to whom the receiver's certificates were issued were allowed to withdraw the dividends thereon received by the Atlantic Ice Company, and that the stockholders of the Atlantic Ice Company, to whom stock had been issued for their contributions to the cash payment of $5,000.00, sold their stock to Peter L. Hopper and John N. Spencer, so that Hopper and Spencer became the owners of all the capital stock issued by the company with the possible exception of one share allotted to Clarence L. Wright, who on August 16th, 1912, was elected a director of the company in the place of David Lescallett. As already indicated, the property of the Baltimore Plate Ice Company was not purchased by the holders of the receiver's certificates, or by the Atlantic Ice Company, with the view of operating the ice plant, but for the purpose of protecting their interests, and the officers of the Atlantic Ice Company made numerous efforts to sell the property. On the 2nd of May, 1911, Peter L. Hopper, the president, reported to the board of directors that he had sold the property of the company to the Independent Ice Company of Baltimore City for $10,000.00 cash and "$25,000.00 par value of preferred stock—and $25,-000.00 par value of the common stock" of the latter company. His action was ratified by the board, and he was directed to hold the cash and stock mentioned subject to such disposition thereof as should be thereafter made by the Atlantic Ice Company. On August 16th, 1912, the board of directors, composed of Messrs. Hopper, Spencer and Wright, approved the action of Messrs. Hopper and Spencer in exchanging 250 shares of the common stock of the Independent Ice Company for $5,000.00 cash and 170 shares of the preferred stock of that company, and on the 17th of September, 1912, the board of directors, composed of Messrs. Hopper, Spencer and Wright, who were the holders of all the stock issued by the

Atlantic Ice Company, accepted the offer of Messrs. Hopper and Spencer to pay $75.00 per share for its preferred stock of the Independent Ice Company and to assume the liability of the Atlantic Ice Company on all outstanding notes of the company, amounting to $28,750.00, and on a bond of indemnity for $5,000.00.

The Atlantic Ice Company refused to pay Smithman for the work done by him under the contract of May, 1910, on the ground that he did not comply with the contract and that by reason thereof the company had suffered damages in excess of the amount it had agreed to pay him. Smithman brought suit on his claim in December, 1910, and on the 31st of March, 1913, recovered a judgment in the Baltimore City Court against the company for $7,945.00, with interest from date and costs of suit. In May, 1913, Smithman filed a bill in the Circuit Court of Baltimore City alleging that the company was insolvent, and praying that it be dissolved and that a receiver be appointed to take charge of its assets and collect the debts due it, and on the 24th of September, 1913, the Court passed a decree dissolving the company and appointing the appellee receiver. In April, 1916, the appellee filed a petition in said Court alleging that the Atlantic Ice Company had no tangible assets; that in addition to the 1,351 shares of the capital stock of the company issued to Peter L. Hopper and John N. Spencer in accordance with the resolution of the stockholders of March 22nd, 1910, 342 shares of the stock were issued to Hopper, Spencer and others, and that said shares were held by them at the time the company made the contract with Smithman; that the issuing of said 1,351 shares to Hopper and Spencer as a bonus for the loan of $20,000.00 "was an arrangement short of actual payment," and "was no payment at all"; that the holders of the other 342 shares had not paid the face value thereof, and praying that he be authorized to enforce the liability of said stockholders. On the 7th of April, 1916, the Court passed an order authorizing and directing the receiver to enforce for the benefit of the creditors of the Atlantic Ice Company "the liability, if any, of

Peter L. Hopper, John N. Spencer, Clarence L. Wright, Edwin M. Lilly, Burton G. Buck, George E. Plitt, Daniel H. Doyle, David Lescallett and Herman Wagner for the shares of the capital stock of said company held by them, and on the same day the bill of complaint in this case was filed by the appellee in the Circuit Court of Baltimore City against the parties mentioned in said order of Court, praying that the liability of said stockholders be ascertained and enforced for the benefit of the creditors of the Atlantic Ice Company, and that they be required to contribute ratably to the payment of its debts, etc.

After the filing of the bill, the death of John N. Spencer was suggested and his administrators were made parties, and they and Peter L. Hopper filed special pleas to the jurisdiction of the Court on the ground that they resided in Harford County. The Court overruled the pleas, and its order was affirmed by this Court in *Hopper* v. *Brodie,* 130 Md. 443. In April, 1917, the death of Peter L. Hopper was suggested and his administrators were made parties. The administrators of Peter L. Hopper and the administrators of John N. Spencer filed demurrers to the bill. The demurrers were overruled and they and the other defendants filed their answers. The decree from which this appeal was taken by the administrators of Peter L. Hopper and the administrators of John N. Spencer, dismissed the bill as to all of the defendants except the appellants; referred the case to the Auditor to state an account from the evidence in the case, and such other evidence as might be produced before him, showing the amount of the indebtedness of the Atlantic Ice Company to John B. Smithman on his judgment, and of other indebtedness of the company, if any, incurred after March 22nd, 1910, and remaining unpaid, and also of such allowances as might be made by the Court to the receiver for his services and expenses, and of the costs in the case of Smithman against the company in said Court, and required the administrators of Peter L. Hopper and the administrators of John N. Spencer, "as such administrators," to pay to the

receiver "an amount sufficient to pay said debts, allowance and costs, shown by such account, not to exceed" the sum of $13,510.00, the par value of the said 1,351 shares of the capital stock of the Atlantic Ice Company, "with interest thereon from April 7th, 1916, the date of the filing of the bill in this case."

It is apparent that the important question presented by this appeal is whether the 1,351 shares of the capital stock of the Atlantic Ice Company issued to Peter L. Hopper and John N. Spencer in pursuance of the resolution of the stockholders of March 22nd, 1910, can be said to have been paid for by the loan of $20,000.00, less the discount thereon.

Section 35 of Chapter 240 of the Acts of 1908 (sec. 35 of Art. 23 of the Code of 1912), which was in force at the time the stock was issued provides as follows:

"Any corporation of this State may issue stock, preferred or common, for services or for property of any description; provided (1) that such services are rendered to or adopted by said corporation; (2) that the property is suitable for any of the purposes for which the corporation was formed; (3) that the value of such services and property, and the propriety of issuing stock therefor, shall be agreed upon and the issue authorized by the affirmative vote of a majority of all the stock (or if two or more classes of stock have been issued, of a majority of each class) outstanding and entitled to vote, given at any meeting duly warned as provided for by sections 15 or 16 of this article, and (4) that in counting the majority of the outstanding stock necessary to authorize the issuance of stock for services or property under this section, no stock shall be counted whose owner or holder is interested in such services or property, nor any stock that has merely been subscribed for, and payment for which is to be made in services."

Section 36 of the same Act (sec. 36 of Art. 23 of the Code of 1912) provides that:

"Whenever any stock is issued in payment for services or property, as aforesaid, a certificate, signed by the president or vice-president and secretary and sworn to by the treasurer, setting forth the amount of stock so issued and the property or services in payment for which said stock is issued, and particularly specifying the nature and character of such property or services, shall, within thirty days after the issue of said stock, be filed in the office of the Clerk of the Circuit Court for the county in which the principal office of the corporation is located (or of the Clerk of the Superior Court of Baltimore City, if such principal office is located in Baltimore City), * * * Provided, however, that the valuation placed by the stockholders upon such services or property at the meeting duly warned, as aforesaid, and the propriety of their action in accepting the same and issuing the agreed number of shares therefor, shall in the absence of actual fraud be conclusive against and binding upon any and all creditors of the corporation."

And section 41 of the Acts of 1908 (sec. 66 of Art. 23 of the Code of 1912) declares that:

"Every stockholder of any corporation in this State (except certain corporations therein mentioned) shall remain liable for the benefit of its creditors for the amount of the face value of his stock, or of his subscription in case the stock has not been issued, less the amount he shall already have paid thereon, until he shall have paid said amount in good faith; and in the event of the insolvency of the corporation, such liability shall be considered as an asset of the corporation and may be enforced by the receiver, trustee or other person winding up the affairs of said corporation, notwithstanding any release, agreement or arrangement short of actual payment which may have been made between said corporations and said stockholder."

It is conceded in this case that Messrs. Spencer and Hopper did not pay any money for the 1,351 shares of stock issued

to them in pursuance of the resolution of the stockholders, and that the stock was not issued for any property transferred to the company, and it seems equally clear that they were not issued for *services,* within the meaning of the provisions of the Code referred to. In Webster's New International Dictionary a "service" is defined as an "Act of serving;—the performance of labor for the benefit of another, or at another's command," and it is in that sense that the word services is used in the Act referred to. See 1 *Machen on Corporations,* sec. 785. In one sense anything which promotes the interest of another, and any benefit is a service, and in that sense Messrs. Spencer and Hopper in lending the $20,000.00 may have rendered the company a valuable service. But that evidently is not the sense in which the word "services" is used in the statute. Moreover, the resolution of the stockholders and the certificate of the officers of the company show that the stock was issued as a "bonus" for the loan. A bonus is defined as "something given in addition to what is ordinarily received by, or strictly due to, the recipient" (Webster's New International Dictionary), and it is evident that the provisions of our statutes do not contemplate the issuing of stock for anything except its value in money, property or services. In the case of *Richardson* v. *Green,* 133 U. S. 30, where the stock of a corporation was issued as a bonus for a loan to the corporation, the Court clearly points out the liability of the stockholders for the value of the stock. In the case of *Hughes* v. *Hall,* 117 Md. 547, and in the case between the same parties reported in 119 Md. 487, where the subscribers to the preferred stock of the company received as a *bonus* the common stock of the company to the amount of twenty-five per cent. of their subscriptions for the preferred stock, this Court in effect held that the holders of such common stock were liable to the receiver for the amount thereof.

The case of *Trent Import Co.* v. *Wheelwright,* 118 Md. 249, and *Handley* v. *Stutz,* 139 U. S. 417, cited by the appellants, are in accord with the cases to which we have referred, and tend to support the view we have expressed. In the first

of these cases the Court said: "In the case before us the specific question is whether the plaintiff corporation can legally issue to the defendant common stock for which no money has been or will be received by it from any source and which represents no return to the company in property or labor equal in fact to the par value of the stock or so estimated in good faith by the directors. We think it is clear that such an issue of stock to the defendant cannot be made by the corporation without a violation of the law to which it is subject." In *Handley* v. *Stutz, supra,* the Court found that the bonds and stocks had been sold at a price equal to the value of both, and said: as the stock "was taken by the subscribers to the bonds at a price fairly representing the value of both stock and bonds, we think the transaction should be sustained, and that the defendants cannot be called upon to respond for the par value of such stock, as if they had subscribed to the original stock of the company." In the same case the Court held stockholders liable for additional stock distributed to the original stockholders. But even if this case could be construed as supporting the contention of the appellants, it would not be controlling in a case where the statute under which the corporation was incorporated requires the stock to be paid for in money, property or services.

It is urged by the appellants that Messrs. Hopper and Spencer rendered valuable services to the company in securing loans to it and managing the affairs of the company. But the obvious answer to this view is that the stock in question was not issued for such services, but as a bonus for the loan of $20,000.00. The decree appealed from refers the case to the Auditor of the Court to state an account of the indebtedness of the company, from the evidence in this case and such further evidence as may be produced before him, and the appellants are thereby afforded an opportunity to establish their claim for any services the company was liable for.

The appellants also claim that the Atlantic Ice Company was largely indebted to Hopper and Spencer for money loaned and advanced by them. It would be difficult, if not impossi-

ble, from the evidence in this case to determine in what amount, if any, the company was indebted to them. But if the appellants can establish such indebtedness there is no reason why it should not be allowed by the Auditor in the account to be stated by him in accordance with the decree of the Court below.

The only ground of the demurrer relied on by the appellants in their brief is *laches,* and there is nothing in the bill or the evidence in the case to sustain that defense. In the case of *Demuth* v. *Old Town Bank,* 85 Md. 315, this Court, speaking through CHIEF JUDGE MCSHERRY, said: "Strictly speaking, and using the term as it is understood in the law, laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing *prejudice* to an adverse party, operates as a bar in a Court of Equity." In this case the bill does not disclose, nor does the evidence show, any neglect or delay on the part of Smithman or the appellee, either in the bringing of the prosecution of the suits instituted by them, that prejudiced the appellants. The bill contained all the averments necessary to entitle the plaintiff to the relief sought. *Hughes* v. *Hall,* 117 Md. 547. The stock issued to Hopper and Spencer was the original stock of the company, and the suggestion that it had no value at the time it was subscribed for or issued has but little force in view of the fact that the capital stock of the company was $25,000.00, and the company owned property for which it had paid $34,500.00, or had contracted to pay that amount, and which it subsequently sold for $46,500.00.

In the view we have taken of the case it is not necessary to pass on the exceptions to the evidence, as a different ruling in respect thereto would not have affected our conclusion.

It follows from what has been said that the decree must be affirmed.

*Decree affirmed, with costs and case remanded.*