### LOUISIANA SOUTHERN RY. CO. v. ANDERSON, CLAYTON & CO.

No. 13143.

United States Court of Appeals Fifth Circuit.

April 2, 1951.

St. Clair Adams, Jr., New Orleans, La., for appellant.

Geo. S. Wright, Dallas, Tex., J. Raburn Monroe, Nicholas Callan, New Orleans, La., for appellee.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

Anderson, Clayton and Company, alleging receipt by the Gulf, Mobile and Ohio Railroad Company as a common carrier of two cars containing a specified number of bales of cotton, of which it was the owner, and the issuance by this carrier of bills of lading, consigned to the order of appellee, destination New Orleans, La., "notify Anderson, Clayton & Co.," sued Louisiana Southern Railway Company, appellant, in two claims for damages for failure to deliver. Both claims were predicated upon the allegation that "the said cotton was duly delivered into possession of defendant as a common carrier. * * * Defendant as delivering carrier under the above shipment and contract of carriage was bound and obligated to deliver * * * cotton to plaintiff at New Orleans, Louisiana," but failed to deliver, any of one shipment, and of the second only bales which had been damaged by fire, with consequent alleged loss to appellee. By way of defense appellant answered denying it took possession as delivering carrier, but admitted taking possession of the cars "on the interchange track * * * for the purpose of performing a switching service at point of destination," and averred that the cotton was not delivered for the reason that it "was destroyed by fire" under circumstances under which defendant is not legally liable or in any manner responsible. It further asserted as to both claims that the defendant was not a delivering carrier, but was a carrier performing "merely a switching service at the point of destination," and it alleged that as to both cars the defendant was free of negligence and in no way at fault. An alternative defense of constructive placement or delivery was plead, but this defense is now abandoned.

The case was tried by the Judge without a jury upon a stipulation as to facts and the presentation of oral testimony. The stipulation admits the shipment as alleged and that the defendant received the cotton at the times specified, which receipt was evidenced by a daily interchange report of cars. One car was received at 5:10 P. M., November 8, 1944 and remained on defendant's interchange track until about 7:20 A. M., November 9, 1944, at which time it was discovered to be on fire. "The car was sealed when delivered to defendant and was still sealed when discovered to be on fire. The fire did not result from negligence on the part of defendant, its agents or employees." There is a similar stipulation with reference to the fire in the second car, except that there is more time intervening between receipt and discovery of fire because of the intervention of a week end. It is stipulated that the reason for nondelivery was the fire. From the oral testimony it appears that the appellant has the only line with rail service to the directed point of movement of the cars, the warehouse of appellee, after they had reached their destination in New Orleans at the terminal of the Gulf, Mobile and Ohio Railroad Company, and that the bills of lading or copies thereof were not tendered to the appellant, nor was it paid anything by the consignee, but that appellant is compensated by the Gulf, Mobile

and Ohio Railroad Company on the basis of a switching tariff published by the defendant, the compensation being $6.05 for each car without regard to the size of the car, number of bales of cotton, or the weight of the shipment, and appellant did not receive any part of the freight charges prepaid on the respective shipments. The defendant is not named in the bills of lading, but handled the switching movement for the line-haul carrier to 'enable it to make delivery.

The trial Court made findings of fact embracing the above and a further finding with reference to a provision of the bills of lading issued by the line-haul carrier providing: "The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damages thereto." In its conclusions of law it found liability predicated upon the nondelivery of the shipments, that at the time of damage they were in interstate commerce and in defendant's possession as a common carrier and, enforcing "the terms of the bills of lading," in effect held the appellant to be a participating carrier,[1] and therefore adjudged liability. The Louisiana Southern Railway Company has appealed from this judgment.

It is contended that the appellant as a matter of law was not a delivering carrier but was performing merely a switching service at the point of destination and is not subject to the obligation of the bills of lading as enforced by the trial Court. Relying upon the provisions of the statute,[2] it is contended that appellant not being a delivering carrier, "is not legally liable for damage to property in its possession in the absence of negligence."

The appellee, in this Court does not controvert the contention that appellant was not the delivering carrier, nor does it expressly attempt to support the finding of the Court that the appellant was liable under the terms of the bills of lading. As we understand its position, it is that since the loss occurred while the appellant was in possession of the shipment before delivery it was, even if a switching carrier, liable for the loss.

As set forth above, the plaintiff-appellee's claim by its pleading was predicated upon the contention that the defendant-appellant was the delivering carrier and liable under the terms of the bills of lading. However, as a matter of law this position is not tenable for, as shown by the undisputed facts in this case, and as disclosed by the stipulation and the oral testimony, and implicit in the Court's findings of fact, the carrier performing the line-haul service nearest to the point of destination was the Gulf, Mobile and Ohio Railroad Company which by the statute, *supra,* must be construed to be the delivering carrier. The provision and purpose of this statute clearly evidences the congressional intent that a switching carrier should not be subjected to the liability for any antecedent loss or damage of either the initial, connecting, or delivering carrier. Consequently, both by law and the facts as shown here, the appellant was not liable for loss or damage to the shipments caused by other carriers and its liability

---

1. "(1) The shipments of cotton had not been delivered to the consignee at the time the damage complained of was sustained. Not having been delivered, they were at the time the damage was sustained in interstate commerce, and were at the time in the possession of the defendant, a common carrier.

"(2) By the terms of the bills of lading, any carrier in possession was subjected to liability for loss or damage, and that governed the entire transportation, and fixed the obligations of all participating carriers, insofar as their provisions were applicable and valid. Keystone Motor Freight Lines v. Brannon-Signaigo Cigar Company [5 Cir.], 115 F.2d 736, 739. The case of Missouri Pacific R. Co. v. Reynolds-Davis Grocery Co., 268 U.S. 366, 45 S.Ct. 516, [69 L.Ed. 1000] is not to the contrary."

2. "* * * And provided further, That for the purposes of this paragraph and of paragraph (12) the delivering carrier shall be construed to be the carrier performing the line-haul service nearest to the point of destination and not a carrier performing merely a switching service at the point of destination". * * * 49 U.S.C.A. § 20, subsection 11.

was not subject to be measured by the provisions of the bills of lading, to which, as a mere switching carrier at the point of destination, it was not a party. Cf. Missouri Pacific R. Co. v. Reynolds-Davis Grocery Co., 268 U.S. 366, 45 S.Ct. 516, 69 L.Ed. 1000. So far as the bills of lading are concerned, the switching carrier was only the agent of the line-haul carrier. Missouri Pacific R. Co. v. Reynolds-Davis Grocery Co., supra. It follows therefore that the trial Court erroneously enforced the obligation of the bills of lading upon the defendant-appellant as a participating carrier.

This Court's decision in Keystone Motor Freight Lines v. Brannon-Signaigo Cigar Company, 5 Cir., 115 F.2d 736, relied upon by the trial Court in support of its conclusions of law, is not applicable where a switching service is involved. In that case the Court expressly found that the carrier held liable was not under the facts there engaged in a switching service at the point of destination. Indeed it was upon this basis that the Court distinguished its ruling from that in Missouri Pacific R. Co. v. Reynolds-Davis Grocery Co., supra.

It is true that the Court's first conclusion of law is legally correct. However, it is apparent from the following conclusions that this finding was made as a predicate for the liability of the defendant-appellant under the bills of lading as a "participating carrier." As we have shown above, for this to be true it was necessary for the defendant to be a delivering carrier which, as shown, is not correct. In the ordinary case the first conclusion of law might sustain a determination of the present contention of the appellee that the defendant is liable for a loss occurring on its own line. We may concede this arguendo, but it is apparent from the pleadings and the record as a whole, that this contention was not seriously urged in the trial Court, nor was the issue developed even without pleading, and it is not the case at all as plead by plaintiff. Liability is expressly alleged upon the "contract of carriage," that is, the bills of lading. Furthermore, in view of the nature of the stipulation and the evidence as to the fire being discovered in cars sealed when received and sealed at the time of discovery of fire, in one instance even before the car had been touched by appellant (and both cars being treated alike in the suit), and in view of the stipulation that the defendant was guilty of no negligence, it is clear that in the circumstances of this case there is no serious contention that the defendant is liable as a common carrier except as predicated upon such liability as might be imposed by the statute for the proximate cause of damage originating and inflicted prior to its receipt of the shipments in its capacity as a switching carrier at the point of destination. This in effect is only another way of attempting to assert against the switching carrier the liability of the line-haul delivering carrier, which we have shown may not be done. Therefore under the circumstances of this case there is no occasion to determine (and indeed it would appear improper to attempt to do so) the independent liability of the defendant as a common carrier, and we therefore decline to consider whether there could be found some basis for the enforcement of the liability.

We adjudge the case here as it was plead and tried in the trial Court, and are thereby impelled to the conclusion that the trial Court erred in holding the defendant was subjected to liability by the terms of the bills of lading. The judgment is reversed and the cause remanded with direction to enter judgment on the present claim in favor of the defendant.

Judgment reversed and remanded.