## A. M. COLLINS & CO. et al. v. PANAMA R. CO.

No. 13658.

United States Court of Appeals Fifth Circuit.

June 27, 1952.

Rehearing Denied July 31, 1952.

Holmes, Circuit Judge, dissented.

John O. Collins, Ancon, C. Z., for appel-lant.

Paul A. Bentz, Balboa Heights, C. Z., for appellee.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is by plaintiffs below from a judgment in their favor for $500. The appellants adopt the statement of the case from the opinion of the District Judge:

"On May 24th, 1950, the 'Americo Contact Plate Freezers, Inc., of New Jersey' shipped from New York to Cristobal in the Canal Zone freight listed as nine packages, one of which contained an electric freezing unit. These articles of freight were delivered to and received by the 'Coldemar Line' and placed on vessel, the 'M/S Immen' to be transported under bill of lading and delivered on port at Cristobal to order of Captain Hans Elliott of Panama, Republic of Panama. (Hans Elliott is a member of a partnership firm doing business in Panama as A. M. Collins & Co.)

"Upon docking at the Port of Cristobal, the Captain of the vessel M. S. Immen not desiring to use the equipment or labor of the vessel to unload its cargo, engaged the equipment and services of the Panama Railroad Co., to perform that service. The freezer unit while being removed by the Railroad from ship to docks was dropped, resulting in that its working parts and equipment sustained a definite injury.

"The Plaintiff as consignee and owner of the freezer unit has instituted this action against the Panama Railroad, seeking to recover from the Railroad its claimed damages. The ship Immen, or its owner or operator, have not been joined in this proceeding.

"The Railroad by its answer pleads the provision of bill of lading which limits recovery of damages of any amount in excess of $500.00."

Appellants contend that the bill of lading has no application on the theory that appellants and appellees were not formally parties to it. Appellants contend further that the limitation contained in the bill of lading would be void under Title 3, Section 933 of the Canal Zone Civil Code adopted by an Act of June 19, 1934, Chapter 667, 48 Stat. 1122, which provides in pertinent part as follows:

"Contract fixing damages, void.— Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void * * *."

The Harter Act, 46 U.S.C.A. § 190, et seq., was held to be superseded for the most part by the Carriage of Goods by Sea Act, of April 16, 1936, Ch. 229, 49 Stat. 1207, 46 U.S.C.A. §§ 1300–1315. The Monte Iciar, 3 Cir., 167 F.2d 334, 336; cf. U. S. v. Atlantic Mutual Insurance Co., 343 U.S. 236, 72 S.Ct. 666. Likewise, the provisions of the Canal Zone Civil Code relied upon must give way to the provisions of the later enacted Carriage of Goods by Sea Act, which applied to this shipment upon one or the other of two theories.

If Cristobal, Canal Zone, is a port of a foreign country, as held by the District Judge,[1] then by Section 13 of the Act, 46 U.S.C.A. § 1312, it applied to the contract of carriage. On the other hand, if Cristobal is a port of the United States or its possessions then the bill of lading contained

an express statement that it was subject to the provisions of the Act as was authorized by Section 13, 46 U.S.C.A. § 1312; see Globe Solvents Co. v. The California, 3 Cir., 167 F.2d 859; The Vale Royal, D.C., 51 F.S. 412, 424.

The bill of lading contains an express limitation of liability to $500.00 per package or per customary freight unit as permitted by Section 4(5) of the Act, 46 U.S.C.A. § 1304(5):

"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier."

A possible difference might be claimed between an application of the Act *ex proprio vigore* on the theory that Cristobal is a foreign port and its application by reason of the agreement contained in the bill of lading in that in the latter alternative the limitation of liability may not be effective as to the Panama Railroad Company unless its services were engaged either expressly or impliedly subject to the same limitation of liability. For reasons hereafter stated we reach the conclusion that the Panama Railroad Company was acting under the limitation of liability provisions of the bill of lading. It is not necessary, therefore, to decide whether or not Cristobal is a foreign port.

While Congress is bound to have known that ships are usually unloaded by stevedores, Atlantic Transport Co. of West Virginia v. Imbrovek, 234 U.S. 52, 61, 34 S.Ct. 733, 58 L.Ed. 1208; 48 Am.Jur. Shipping, Sec. 211, it nevertheless provided

---

1. Citing opinion of Mr. Wade H. Ellis, Acting Attorney General in Vol. 27 of Opinions of Attorney General, Page 594–1908–ments 1909; Luckenbach S. S. Co. v. U. S., 280 U.S. 173, 50 S.Ct. 148, 74 L.Ed. 356; Vol. 43 of Harvard Law Review, Page 836.

in the Carriage of Goods by Sea Act that "the term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C.A. § 1301(e), see also Secs. 1302, 1303(2), 1306, 1307. It is conceded, as it must be, that the contract of carriage under the bill of lading was not fulfilled until the cargo described was delivered on dock at Cristobal.

 The controlling feature of the case is not, as appellants contend, who are the formal parties to the bill of lading. What is controlling are the terms, purpose and effect of the bill of lading as applied to the facts. The unloading of the shipment was the obligation of the carrier. In the absence of a different agreement with persons not parties thereto, the terms of the bill of lading controlled all steps of the transportation, including, of course, the discharge of the shipment. The stevedore was not a meddler, nor did it inflict intentional harm. It was an agent selected by the carrier to carry out the carrier's obligation to safely deliver and discharge the cargo as required by its contract with the shipper. The negligent injury and damage arose in the course of this very performance of the carrier's obligation. This is well stated by the trial court.[2] That the carrier would engage such services must have been contemplated by the parties. The situation is substantially the same as if the carrier had shipped by another vessel, as authorized by the bill of lading. A stevedore so unloading, in every practical sense, does so by virtue of the bill of lading and, though not strictly speaking a party thereto, is, while liable as an agent for its own negligence, at the same time entitled to claim the limitation of liability provided by the bill

of lading to the furtherance of the terms of which its operations are directed.

There is no occasion here for the application of the general rule which forbids common carriers to stipulate for immunity from their own or their agent's negligence. Here there is a limitation as to value, as provided by the statute and by the bill of lading. The distinction between a stipulation for an immunity from negligence and a limitation of value is well recognized. Adams Express Co. v. Croninger, 226 U.S. 491, 509, et seq., 33 S.Ct. 148, 57 L.Ed. 314. This limitation of value and consequent limitation of recovery available to the carrier, the principal, is likewise available to its alter ego.

The fact situation in Reid v. Fargo, as President of American Express Co., 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156, was similar to that here involved, but the similarity does not extend to the principles controlling here. In that case, as may be clearly seen from the paragraph of the opinion ending on page 547 of 241 U.S., at page 713 of 36 S.Ct., Hogan & Sons, the stevedores, did not undertake to set up the limitation of liability contained in the bill of lading. In that case the Court did not pass on whether the limitation was available to the stevedores because the stevedores did not even claim it. Further, that case was not governed by the Carriage of Goods by Sea Act nor by any other statute intended to meet the need for uniformity in ocean bills of lading. If, in the present case, the carrier had contracted with the stevedoring company for a limitation of liability in a larger sum or for liability without limitation, a different situation would be presented.

2. "The contract of carriage was not fulfilled until the cargo described was delivered on dock at Cristobal. The duty of discharging or unloading the freezer unit rested on the carrier. This performance of duty was delegated to another contracting party, and any services contributed by that third party was the act and service which the carrier had agreed to perform, and any failure or neglect of the third party would not relieve the car-

rier from its liability for any damage sustained. The services rendered by the Railroad Company were contributed in completing the contract between the shipper and the carrier, and therefore the conditions and stipulations in that contract, until completely executed, are available to any party who engaged in carrying out or completing the performance of that contract."

■ All parties concerned with a negotiable ocean bill of lading, the carrier, the shipper, the consignee, the discounting bank, and the insurance underwriter, are alike interested not so much in the method as in the *result* to be achieved, the delivery of the cargo at the port of destination in good condition. The bill of lading contract with the carrier covers that completed service from the time of loading of the goods to their discharge from the ship. The extent of liability of the carrier and of other persons performing that service under the carrier does not depend upon the means adopted but is governed by the contract covering the entire service.

■ The limitation on liability of the carrier under the Carriage of Goods by Sea Act is not intended to be personal, but, unless otherwise agreed, extends to any agency by means of which the carrier performs its contract of transportation and delivery. As well stated in 2 Am.Law Inst., Restatement of Agency, Sec. 347: "An agent who is acting in pursuance of his authority has such immunities of the principal as are not personal to the principal." See also Herzog v. Mittleman, 155 Or. 624, 65 P.2d 384, 109 A.L.R. 662, 666; 35 Am.Jur., Master & Servant, Sec. 584, p. 1020, note 11.

In an analogous situation arising under the Carmack Amendment, 49 U.S.C.A. § 20(11), it was held that:

"The bill of lading, required to be issued by the initial carrier upon an interstate shipment, 'governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid.' " Galveston Wharf Co. v. Galveston H. & S. A. Ry. Co., 285 U.S. 127, 134, 135, 52 S.Ct. 342, 344, 76 L.Ed. 659; see also Missouri, Kansas & Texas Ry. Co. v. Ward, 244 U.S. 383, 387, 37 S.Ct. 617, 61 L.Ed. 1213; Cleveland C. C. & St. Louis Ry. Co. v. Dettlebach, 239 U.S. 588, 593, 36 S.Ct. 177, 60 L.Ed. 453; Kansas Southern Ry. Co. v. Carl,

227 U.S. 639, 648, 33 S.Ct. 391, 57 L.Ed. 683.

The attempted analogy between a stevedore under the Carriage of Goods by Sea Act and the switching carrier under the Carmack Amendment does not hold true, because the Carmack Amendment is expressly made *not applicable* to the switching carrier, 49 U.S.C.A. § 20(11),[3] while, as we have already noted, the Carriage of Goods by Sea Act expressly covers the period up to the time when the goods are discharged from the ship. 46 U.S.C.A. §§ 1301(e), 1302, 1303(2), 1306, 1307.

It would be unreasonable to assume that Congress intended that, in order to make the limitation of liability provided in the Carriage of Goods by Sea Act applicable to the unloading of the goods, the carrier must do its own stevedoring. So to hold would be contrary to the broad purposes of meeting the need for uniformity in ocean bills of lading illustrated by the history of the Carriage of Goods by Sea Act as explained in Pan-Am Trade & Credit Corp. v. The Campfire, 2 Cir., 156 F.2d 603, 605 and The Bill, D.C., 55 F.Supp. 780, 783. On the contrary the interests of all concerned are best served by according the carrier the utmost liberty of choice of means by which its task may be performed most safely, economically, and efficiently. Experience teaches that in the unloading of the cargo that choice would usually fall upon a stevedoring company.

The judgment appealed from is Affirmed.

HOLMES, Circuit Judge (dissenting).

It is undoubtedly true that a corporate stevedore has the same liability for negligence that an individual stevedore would have in the same circumstances. It is equally true that the law looks to the nature of the work that is being done, and not to who is doing it, in determining liability for a tort. Immunity from such liability is the exception and not the rule. There is no such doctrine as vicarious immunity from liability for torts.

3. See Mo. Pac. R. Co. v. Reynolds-Davis Co., 268 U.S. 366, 45 S.Ct. 516, 69 L.Ed. 1000; La. Southern Ry. Co. v. Anderson, Clayton & Co., 5 Cir., 187 F.2d 908.

It is going a long ways to exempt any member of society from liability for negligently injuring a fellow member. The Carriage of Goods by Sea Act does not exempt anyone from liability for negligence, but expressly binds the carrier properly and carefully to load, handle, and discharge the goods carried. 46 U.S.C.A. § 1303(2).

The right of the ship or carrier to limit its liability for negligence to an amount not exceeding $500 is in derogation of the common law and must be strictly construed. It does not shield an employee, not a party to the bill of lading, who (for instance) negligently sets fire to or otherwise negligently injuries the cargo. No ship, carrier, or party to the bill of lading, is being sued in this case, but only the corporate stevedore, which is primarily liable under the decision of Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156. The Supreme Court held that, upon the libellant's inability to make the full amount out of the stevedore, it would be entitled to recover against the steamship company the amount of its limited liability, and after that the libellant could go against the express company for any deficiency.

I am satisfied with the above authority; but, for the benefit of those who are not, will discuss the matter a little upon general principles. The appellee owed a duty to the public to keep its stevedoring equipment in a safe condition; the answer admits that it did not do so. Where an agent violates a duty that he owes to a third party, he is personally liable to the latter, not by reason of his agency, but upon the ground that he has failed in his common law obligation not to injure another. 3 C.J.S., Agency, § 221. In Smith, Kirkpatrick & Co. v. Colombian Steamship Co., 5 Cir., 88 F.2d 392, 395, this court said: "If respondent be considered a mere forwarding agent it would still be liable for its own negligence, regardless of deviation."

"The liability of an agent for his own negligence has long been embedded in the law." Brady v. Roosevelt S. S. Co., 317 U.S. 575, 580, 63 S.Ct. 425, 428, 87 L.Ed. 471. The principle is an ancient one, and is mentioned in Blackstone's Commentaries. At common law, the carrier's liability as warehouseman was different from that of a carrier of goods; a fortiori, his liability as stevedore is different from that of a carrier. In Quinn v. Southgate Nelson Corp., 2 Cir., 121 F.2d 190, the Second Circuit held that the liability of the principal for a wrong does not necessarily immunize his agent, that there are numerous instances where dual liabilities are not mutually exclusive, and that a plaintiff may be lucky enough to have two strings to his bow (citing numerous authorities). In Brady v. Roosevelt S. S. Co., 317 U.S. 575, at page 581, 63 S.Ct. 425 at page 428, 87 L.Ed. 471 the court said: "The withdrawal of the right to sue the agent for his torts would result at times in a substantial dilution of the rights of claimants. * * * Immunity from suit on a cause of action which the law creates cannot be so readily obtained. Cf. Guaranty Trust & S. D. Co. v. Green Cove Springs & Melrose Railroad Co., 139 U.S. 137, 143, 11 S.Ct. 512, 514, 35 L.Ed. 116."

The bill of lading in this case limited the carrier's liability in question to $500, but it did not confer upon the carrier the power to diffuse partial dispensations to its negligent stevedores or other agents for their wrongful acts.

Rehearing denied; HOLMES, C. J., dissenting.