AUTOBUSES MODERNOS, S. A.,
Libellant,

v.

THE FEDERAL MARINER, her engines, etc., North Atlantic and Gulf Steamship Co., Inc. and Lavino Shipping Company, Respondents, and Norcuba Steamship Company, S. A., Impleaded Respondent, and Federal Commerce and Navigation Co., Ltd., Additional Impleaded Respondent.

No. 221 of 1951, Admiralty.

United States District Court
E. D. Pennsylvania.
July 22, 1954.

Otto Wolff, Jr., Lewis, Wolff & Gourlay, Philadelphia, Pa., for libellants.

Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for North Atlantic & Gulf S. S. Co.; and Norcuba.

Rawle & Henderson, Philadelphia, Pa., for Lavino.

Krusen, Evans & Shaw, Philadelphia, Pa., for Federal Commerce & Navigation Co., Ltd.

KIRKPATRICK, Chief Judge.

On August 11, 1950, a motor bus weighing some 15,000 pounds was being loaded on board the S. S. Federal Mariner, at Pier 53, Philadelphia, by means of the ship's heavy lift gear, consisting of winch, boom and wire rope runner. The bus had been hoisted from the pier, moved inboard to a position over the hatch and lowered part way when suddenly the runner started to run free and uncoiled its whole length from the drum of the winch, and the bus dropped. The cause of the accident was the improper manner in which the runner had been secured to and wound upon the winch drum.

The lift gear had been rigged by members of the ship's crew, supervised by the First Officer. Three employees of Lavino (the stevedore), including the foreman of the gang, were nearby, waiting to go ahead with the loading, and they observed what was being done. Although, apparently, they did not consider it definitely dangerous, they called the First Officer's attention to the fact that the method of securing the runner was one which was neither usual nor proper. After his reply that this was the way it had often been done and "this is the way we do it", they made no report to their superiors, but accepted the situation and proceeded to operate a piece of machinery which they had correctly diagnosed as improperly set up.

I find that the accident was due to the joint negligence of the ship's officer and the stevedore's employees.

The task of sorting out the claims and counterclaims made by the various parties to this action for damages to the bus and finding upon which of them liability for the loss falls remains. Federal Commerce and Navigation Co., Ltd., (Federal) was the owner of the ship and the employer of the crew. Federal had time-chartered the ship to Norcuba Steamship Co. S. A. (Norcuba) which in turn had chartered it to North Atlantic and Gulf Steamship Co., Inc., (Norgulf) which last made the contract of carriage and issued the bill of lading. As the record now stands the action is by Autobuses against Norgulf and Lavino. Norgulf disclaims liability and seeks indemnity from Lavino and Norcuba. Norcuba claims indemnity from Federal, and Federal claims indemnity from Norgulf and Lavino. There is no question about Norcuba's right to indemnity from Federal or Norgulf's from Norcuba, so that Norcuba's position need not enter into the discussion.

My conclusions as to liability are:

1. Norgulf is liable to the libellant on its bill of lading, but not for negligence.

2. Federal is liable to the libellant as a tortfeasor causing damage through negligence.

3. Federal is liable to Norgulf on the latter's claim for indemnity, for the same reason.

4. Lavino is not liable either to Norgulf or Federal for indemnity.

5. Lavino is liable to the libellant, as a joint tortfeasor with Federal.

6. None of the respondents are liable for more than $500.

### Federal's liability.

The gear was being rigged by the crew under an arrangement between them and Lavino, and Lavino had no control whatever over the manner in which the rigging was done. Had Lavino believed that a dangerous situation was in the making it might have refused to go on with the operation, but there was no way in which it could have compelled the crew to rig the gear properly. I do not think that the intervening charters relieved Federal from responsibility for the negligence of its employees,

nor that the doctrine of "loaned servants" or anything analogous to it applies.

In view of what has been said, the contention that Federal is also liable by reason of certain provisions of its charter to Norcuba (passed on by Norcuba in its charter to Norgulf), obliging the owners to provide adequate gear and to keep the vessel and machinery in an efficient state, need not be passed upon.

### Lavino's liability and Federal's claim for indemnity from Lavino.

Federal, while declining to appear in the character of a tortfeasor, claims that, if it be held for the damage as a result of its negligence, it is entitled to full indemnity against Lavino. In United States v. Rothschild International Stevedoring Co., 9 Cir., 183 F.2d 181, the stevedore was held to indemnify the shipowner for injuries sustained by a longshoreman resulting from the use of a defective winch, because the stevedore permitted its employee to use the winch even though it knew of the defect. On the face of it, this decision might appear to be controlling. But, I think that, if the principle involved be carefully examined, it will be seen that there is a critical distinction. Restatement, Torts, Section 441, cited by the Court in the Rothschild case is "The cases in which the effect of the operation of an intervening force may be important in determining whether the negligent actor is liable for another's harm are usually, but not exclusively, cases in which the actor's negligence has created a situation harmless unless something further occurs, but capable of being made dangerous by the operation of some new force and in which the intervening force makes a potentially dangerous situation injurious. In such cases the actor's negligence is often called passive negligence, while the third person's negligence, which sets the intervening force in active operation, is called active negligence." In the Rothschild case the winch was a defective piece of machinery and had been out of order for a considerable period of time. The negligence of the shipowner was, in any view of the matter, passive negligence. A winch got out of order and the owner simply did nothing about fixing it. The present case is quite different. There was nothing wrong with the winch and the gear could have been used with perfect safety. The thing that caused the damage was the manner in which it was rigged. The owner rigged it for immediate use by the stevedore for the particular work which caused the damage, and the rigging and use of the winch were in effect a single operation. Thus, the owner actively participated in the tort which caused the injury.

■ The negligence of Lavino's men was, of course, nearer to the accident in point of time than that of Federal's, but it was less culpable and under the circumstances not an independent intervening cause. It would be a travesty, it seems to me, in view of the relative position of a couple of longshoremen on the one hand and a ship's officer in charge of rigging the ship's gear on the other, to impose full liability by way of indemnity on the longshoremen's employer.

### Libellant's right to maintain the suit.

The damaged bus was one of 111 passenger buses sold by ACF/Brill Motors Co. of Philadelphia to Compania General, etc., a Cuban corporation, for the total price of $1,487,621.90. The contract of sale was dated June 20, 1950, and the buses were sold "with reservation of ownership"—a term not further defined either by the contract or by the evidence. On March 27, 1951, seven months after the accident, Compania General assigned the contract to the libellant by an instrument executed in Cuba which recited certain facts relating to the contract of purchase from Brill. The parties have stipulated that the statements contained in the document are correct. From it, it appears that when the assignment was executed $396,889.90 had been paid leaving a balance due Brill of $1,090,732 plus interest of $7,092.47, that the payment on account had been "paid directly or through

(Compania) by the (libellant)." The instrument of assignment, after the operative words of transfer, says "placing the said company (the libellant) in its own place and stead as purchaser." The assignment acknowledges payment by the libellant of the balance of the contract price with interest to Brill, and Brill, joining in the assignment, gives the libellant a receipt and acquittance and transfers to the libellant the full ownership of the buses. The respondents contend that, inasmuch as the outstanding cause of action for damage to one of the buses involved in the transfer was not expressly included in the terms of the assignment, it did not pass to the libellant but remained vested in Compania, and hence the libellant cannot maintain this suit.

■ There are a number of cases, cited by the respondents, which hold that an accrued cause of action for damage to property does not pass by a mere assignment of the property, but I do not find any which hold that, where the intention of the parties is clear from the terms of the assignment that such accrued cause of action was to pass, the mere fact that it is not expressly mentioned is conclusive. In the present case it seems clear from the general terms of the assignment, from the fact that the libellant either "directly or through Compania" had already paid approximately one-fourth of the purchase price, from the fact that no account of the damage to the bus was taken by way of deduction from the full purchase price and from the recital of the intent of the assignment to place the libellant in the place and stead of Compania as purchaser, that the intention was that the accrued cause of action should go with the contract and the title to the buses.

■ It is true that the law of Cuba governs the rights and obligations arising from this assignment, and there is no evidence of that law before the Court. If the question were one of the validity of the assignment, it is quite likely that the libellant's case would fail for lack of proof of the governing law. See E. Gerli & Co. v. Cunard S. S. Co., 2 Cir., 48 F.2d 115. But the parties have stipulated that the assignment is valid. The only question is what the parties meant, and the intention of parties to a contract is, basically, a question of fact although it is one which has been so often decided by judges that it has come to be regarded as a question for the Court. See Williston on Contracts, Section 616. Either way, when the parties use plain, simple, unambiguous, nontechnical words in a commercial transaction in a civilized country and where the entire transaction is before the Court, the Court will determine what the parties meant by what they said.

### Limitation of liability.

■ The decision of the Court of Appeals for the Fifth Circuit in A. M. Collins & Co. v. Panama R. Co., 197 F.2d 893, is directly applicable to the facts of this case. That decision was approved and followed by the Court of Appeals for the Second Circuit in United States v. The South Star, 210 F.2d 44.

The Collins case had to do with the limitation of a stevedore's liability but the rationale of the decision is applicable to all the respondents in the present case. The Court said [197 F.2d 896] "In the absence of a different agreement with persons not parties thereto, the terms of the bill of lading controlled all steps of the transportation * * *." What the Court said of the stevedore in the Collins case was equally applicable to the owner and charterers in the present case, "It was an agent selected by the carrier to carry out the carrier's obligation to safely deliver and discharge the cargo as required by its contract with the shipper. * * * The situation is substantially the same as if the carrier had shipped by another vessel, as authorized by the bill of lading."

The liability of none of these respondents in the present case can, therefore, exceed $500.

The foregoing opinion contains, I believe, all the facts and principles necessary to the decision of the case. The

statements of fact may be taken as the Court's special findings and the statements of law as the Court's conclusions.

Decree accordingly.