ROBERT C. HERD & COMPANY, Inc., a Maryland Corporation, Appellant and Cross-Appellee,

v.

KRAWILL MACHINERY CORPORA-TION, Kraus Manufacturing Corporation and Engineering Industries International, S. A., Appellees and Cross-Appellants.

No. 7620.

United States Court of Appeals Fourth Circuit.

Argued April 16, 1958.

Decided June 16, 1958.

Robert E. Coughlan, Jr., and George W. P. Whip, Baltimore, Md. (Lord, Whip & Coughlan, Baltimore, Md., on brief), for appellant and cross-appellee.

William A. Grimes, Baltimore, Md. (Ober, Williams, Grimes & Stinson, Baltimore, Md., Fildew, DeGree, Fleming & Gilbride, and Leslie W. Fleming, Detroit, Mich., on brief), for appellees and cross-appellants.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

A stevedoring company was held liable in a civil suit in the United States District Court for the District of Maryland in the sum of $47,992.04, the full amount of resulting damage when a crated press fell into the Baltimore Harbor. The defendant's appeal challenges the amount of the judgment awarded. It claims the benefit of the limitation provisions of the Carriage of Goods by Sea Act (popularly called "Cogsa"), 46 U.S.C.A. §§ 1300–1315,[1] and parallel provisions of

---

1. The limitation of liability in respect to cargo is found in 46 U.S.C.A. § 1304 (5).

"§ 1304. *Rights and immunities of carrier and ship— Unseaworthiness*
&ast; &ast; &ast; &ast; &ast;

"*Amount of liability; valuation of cargo*
"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package

the bill of lading,[2] which limit the liability of the carrier to the sum of $500.00 per package or customary freight unit. The District Judge held that while the carrier's liability is so limited, the stevedore's is not. The plaintiff cross-appeals, complaining of the Court's refusal to allow interest.

The crate containing the press was one of sixty-two cases or crates of machinery and equipment which Krawill Machinery Corporation of Detroit had sold and agreed to deliver to a Spanish purchaser. The particular crate involved in this suit had been loaded on a flat car and brought by rail from Detroit to the dock in Baltimore alongside which the SS Castillo Ampudia was moored, and the press was to be loaded on the ship by Robert C. Herd and Co., Inc., the stevedore, and carried to Valencia, Spain. The case was eight feet wide, five feet long, and eleven feet high, and weighed nineteen tons. As this was, in the judgment of the defendant's manager, too heavy to be lifted by the ship's gear, he arranged for the Bethlehem Steel Company's floating derrick to assist in the loading. The derrick was moored alongside the ship's offshore side, and the derrick's boom was swung over and across the ship's deck so that the hook and gear were suspended over the flat car. As it was found that the regular wire sling could not be slipped under the heavy crate, it was decided to work a thinner wire under the crate, attach it to the hook of the derrick, and then as the crane lifted the crate a very short distance, the regular sling could be inserted under it.

The work was under the sole direction of the stevedore's gang leader, who stood on the pier and gave signals to his man on the deck, who was to relay them to the operator of the derrick. The latter was not informed that the plan was to lift the crate preliminarily only a few inches. Due to a miscalculation of the stevedore's foreman as to the reaction time of the deckman and the derrick op-

lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

"By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

"Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading."

2. The bill of lading of the carrier contained, among others, the following provisions:

"30. In consideration of a choice of freight rates having been offered to the shipper by the Carrier, it is agreed that in case of loss of, or damage to * * goods of an actual value exceeding $500 * * * per package or, in the case of goods not shipped in packages, per customary freight unit, the value of such goods, shall be deemed to be $500 per package or per said unit and the Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per said unit and pro rata in case of partial loss or damage, unless the nature of such goods and a value higher than $500 per package or per said unit shall have been declared in writing by the shipper upon delivery to the Carrier and noted on the face hereof and unless payment of the extra freight charge incident thereto shall have been made or promised * * *, in which case such declared value, or the actual value if less, shall be the basis for computing damages and any partial loss or damage shall be adjusted pro rata. * * *

"37. This bill of lading shall have effect subject to the Carriage of Goods by Sea Act of the U. S. A. and the Carrier and the ship shall be entitled to all of the rights and immunities set forth in said Act. To the extent that any term of this bill of lading is repugnant to or inconsistent with anything in such Act, it shall be void."

erator in the execution of their orders, there was a failure of coordination between the man who signalled from the pier, the man who stood on the deck, and the operator of the derrick. The preliminary lift given the crate was more than the few inches intended. The crate being topheavy, its center of gravity shifted and it fell into the water. The District Judge's finding that the stevedore's foreman was negligent, is well supported and, indeed, is not contested on appeal.

We turn to the pertinent statute. Section 4(5) of Cogsa, codified as 46 U.S.C.A. § 1304(5), is the limitation of damage section. By its express provision, neither the *carrier nor the ship* is liable in an amount exceeding $500.00 per package. Stevedores and others who may become responsible for loss or damage in connection with the movement of goods are not mentioned in this section, and the rights and responsibilities, liabilities and limitations upon liability, with which the act deals are generally in terms of carrier and ship vis-a-vis shipper. Nothing in the language or history of the legislation indicates a purpose to regulate the stevedore's liability.

The Harter Act (46 U.S.C.A. § 190 et seq.), which preceded Cogsa, likewise did not deal specifically with the liability of the stevedore, and was considered to apply to the relation between the cargo shipper or owner and the ship or its owner, and not to the stevedore's liability. Poor, Charter Parties and Ocean Bills of Lading (3d Ed., 1948), Sec. 306, p. 129; Green, "The Harter Act," 16 Harv.L.Rev. 157, 177.

In Reid v. Fargo, 1916, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156, where a bill of lading covering the shipment of an automobile limited the carrier's liability to $100.00, this limitation was enforced as to the carrier. In the same case, however, the stevedore, by whose negligence the automobile was dropped into the harbor, was declared by the Supreme Court liable for the full amount. This was considered the settled law for many years.

Although the later-enacted (1936) Cogsa dealt with the reciprocal rights and obligations of shippers and carriers, there is nothing to intimate that in enacting it, Congress meant to change the announced rule as to the stevedore's independent unlimited liability.

More recently, however, a sharp difference of opinion has arisen on this point. In the Fifth Circuit, in A. M. Collins & Co. v. Panama R. Co., 1952, 197 F.2d 893, certiorari denied 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 677, the majority, in an opinion by Judge Rives, accorded a stevedore operating in the Canal Zone the benefit of the $500.00 limitation. The Court's rationale was that the stevedore was the ship's agent and therefore entitled to any immunity to which the ship was entitled.

We note preliminarily that the case before us may be different, for unlike Collins, we have here evidence that on the eastern seaboard, stevedores base their charges upon such factors as weight, difficulty of handling, etc., and do not, like the carrier, offer a choice of rates in which the declared value of the cargo and the amount of possible liability is considered in fixing the charge. There is, accordingly, less reason in the instant case to infer, as did the majority in Collins, that the limitation of liability in the bill of lading related to or was relied on by the stevedore, or that the carrier and shipper intended to contract for its benefit. Herd and Company had no contract with the shipper, and its agreement with the shipper's agent included no limitation of liability.

However this may be, Judge Holmes' dissent in Collins reasons that a stevedore is subject to the ordinary liability for its negligence; that immunity (or limitation of liability) is the exception and not the rule; that the right of the carrier to limit its liability for negligence to an amount not exceeding $500.-00, being in derogation of the common law, should be strictly construed, and may not be availed of by one who is not a party to the bill of lading. He thought Reid v. Fargo, supra, sufficient authority

for his position, but also invoked the general principle that an agent who violates a duty to a third party is liable for failing in his common law obligation not to injure another. 3 C.J.S. Agency § 221. "The liability of an agent for his own negligence has long been imbedded in the law." Brady v. Roosevelt SS Co., 1943, 317 U.S. 575, 580, 63 S.Ct. 425, 428, 87 L.Ed. 471. In declining to make an inference that a private operator of a government vessel, an agent of an immune government corporation, had likewise been immunized, the Supreme Court said "if Congress had intended to make such an inroad on the rights of claimants it would have said so in unambiguous terms." 317 U.S. at page 581, 63 S.Ct. at page 428.

The bill of lading, concluded Judge Holmes' dissent, limited the carrier's liability to $500.00, "but it did not confer upon the carrier the power to diffuse partial dispensations to its negligent stevedores or other agents for their wrongful acts." 197 F.2d 893, 898.

With the highest respect to the majority opinion in Collins, Judge Holmes' reasoning commends itself to us more. It is not unknown in the law for several liabilities to arise from a single injury and, unless commanded by law or agreed to by the parties, there is no requirement that the same measure of damages shall apply to all persons subject to liability.

We perceive no incongruity in limiting the liability of the ship and its owners, without similarly limiting the stevedore's liability for its tort. The extent of the latter's liability was apparently not in contemplation in the drafting of the statute, or the bill of lading to which it was not a party. The principle that independent liabilities, differently measured, may co-exist, was given recognition by Judge Chesnut in The Steel Inventor, D.C., 35 F.Supp. 986, 996, 997.

It is, of course, true that the practice of using stevedores' services in loading and unloading ships was well known both when Cogsa was enacted and when the bill of lading was executed. In the absence of any reference to the stevedore in defining the statutory or contractual limitation of the carrier's liability, it does not follow that the stevedore was to be included. Rather, the silence of Congress and the contracting parties suggests that only the carrier's and not the stevedore's liability was to be affected. In Wilson v. Darling Island Stevedoring and Lighterage Co., Ltd. (1956), Argus Law Reports 311, 29 Australian Law Journal 740, in a concurring opinion, Judge Kitto of the Australian Supreme Court says:

"A necessity for the carrier to depend upon others to perform his obligations under the contract suggests a strong reason why he should have desired to stipulate for immunity for himself from liability for loss or damage in the course of the performance of those obligations. But there is no such readily discernible reason why he should concern himself to make, or should be understood as making, a similar stipulation for the benefit of those whom he should engage as servants, stevedores and the like and still less is there any ground for understanding the consignor as conceding immunity to such persons. The train of thought of which the exemption clause is a natural expression is that, since the carrier has no alternative but to rely upon others to do the work involved in producing the result contracted for, it is mutually agreeable that he should not have to bear responsibility for any failure of theirs to observe proper standards in the work they do, but that the consignor shall look to them alone to make good any loss or damage which their defaults may cause."

It is urged upon us that the Restatement (2 A.L.I. Restatement, Agency, Sec. 347) entitled the stevedore to the limitation made in favor of the ship. The cited section reads: "An agent who is acting in pursuance of his authority has such immunities of the principal as are not personal to the principal." Assuming that "immunities" includes a limitation

of liability, this still leaves unanswered the question, is the "immunity" conferred by the act and the bill of lading personal to the ship and its owner? We think it is meant for the ship and its owner, not the stevedore. See 66 Harv. L.Rev. 530. If there were a contrary intent, nothing would have been easier than to say in the statute or in the bill of lading that the limitation applies to the ship, its owners and loading agents. As already noted, not only is the statute silent as to stevedores, but there was no suggestion, so far as we can discover, in the legislative history, that stevedores were expected to be included in the statutory limitation. It is not for us to speculate that the protective policy which Congress thought appropriate in respect to shipowners might well be extended to others.

The bill of lading defines the term "carrier" to include "owners, vessels, masters and charterers thereof, and any substituted or continuing carrier." By no natural or reasonable interpretation does the stevedore fit within any of these categories. We do not think that the broader interpretation of the definition, urged by the stevedore, is required or appropriate here.

The Collins case was cited approvingly in a brief opinion giving a stevedore the benefit of the one-year limitation for suit under Cogsa, United States v. The South Star, 2 Cir., 1954, 210 F.2d 44. The District Court for the Eastern District of Pennsylvania in Autobuses Modernos, S. A., v. The Federal Mariner, D.C. 1954, 125 F.Supp. 780, extended the Cogsa limitation of liability to the owner and charterer, citing Collins. Relying on Collins and two New South Wales cases, Waters Trading Co., Ltd., v. Dalgety & Co., Ltd. (1951), 2 Ll.L.Rep. 385, and Gilbert Stokes & Kerr Prop., Ltd., v. Dalgety & Co., Ltd. (1948), 81 Ll.L.Rep. 337, the Municipal Court of New York City, in Ford Motor Co. v. Jarka Corporation, Mun.Ct.N.Y., 134 N.Y.S.2d 52, 1954 A.M.C. 1095, held that a stevedore was entitled to Cogsa's benefits. Both of the New South Wales cases, however,

have since been specifically overruled by the Supreme Court of Australia in Wilson v. Darling Island, etc., supra, also by a divided Court, with elaborate opinions supporting both views. The United States District Court for the Eastern District of Michigan, Southern Division, however, recently agreed with the Collins dissent and with the decision of Judge Thomsen in this case. International Milling Co. v. Steamship "Perseus" and Nicholson Transit Company (No. 14,373, Unreported—1957).

We do not think that the rule recognized by the Supreme Court in Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156, has been altered by Cogsa. Nothing in the statute points to any purpose to depart from the Court's view that a ship and its owner may have a limitation of their liability, while a third party tortfeasor, including a stevedore, may remain fully liable. The reasoning underlying Chief Justice White's adjudication remains unimpeached, and that case has not, in our judgment, been effectually distinguished from this.

The interesting suggestion is made that the stevedore should be entitled to the ship's limitation of liability, inasmuch as the stevedore's employees, because they do the work formerly performed by the crew, are entitled, equally with seamen, to maintain actions against the ship for unseaworthiness. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Alaska SS Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798. It requires no argument to demonstrate that the considerations underlying these decisions have no relation to the present issue, and we are certainly not at liberty to extend their doctrine into this area of the law.

We agree with the District Judge that limitation of liability is not automatically available to a stevedore who negligently damages cargo.

The plaintiffs advanced the further contention, which the Court below accepted and assigned as a second ground

for decision against the claimed limitation, namely, that when the crate fell into the harbor, the loading had not begun, but only an operation preparatory to loading, and that therefore the Cogsa period was not in effect. In the view we take of this case, it becomes unnecessary to consider this contention.

Cross-Appeal—The Interest Question

■ There remains the question concerning interest, raised by the cross-appeal. As this is a civil suit within the diversity jurisdiction of the court, we are, by Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, obliged to apply Maryland law as to interest. Title Guaranty & Surety Co. v. State of Missouri, 8 Cir., 1939, 105 F.2d 496, 549; Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., 1941, 116 F.2d 823, 841; Chesapeake & Ohio Ry. Co. v. Elk, 4 Cir., 1950, 186 F.2d 30, 36 A.L.R.2d 329.

■ Maryland recognizes a difference in this respect between suit on a contract to pay money on a day certain, as in the case of a bill of exchange or promissory note, or a contract for the payment of interest, in which cases interest is due as a matter of right; and others in which the allowance of interest is ordinarily discretionary, "according to the equity and justice appearing between the parties on a consideration of all the circumstances of the particular case." Newson's Adm'r v. Douglass, 1826, 7 Har. & J., Md., 417, 453; see Frank v. Morrison, 1881, 55 Md. 399, 408; Bucher v. Federal Baseball Club, 1917, 130 Md. 635, 643–644, 101 A. 534.

■ However, the gulf between the two categories—in the first of which interest is allowed as of right, and the other, where the allowance is discretionary—is not as wide as might be supposed. Increasingly, the tendency of the courts has been to treat interest as part of the just compensation due an injured party. 15 Am.Jur., "Damages," Sec. 159 et seq., 1 Oleck, Damages to Persons and Property (1957), Sec. 295, p. 623; A.L.I., Restatement, Torts, 927(c).

Maryland is one of the states in which this tendency was manifested early. In Corner v. Mackintosh, 1878, 48 Md. 374, 389, a suit for trespass to chattels, the Maryland Court of Appeals said: "The plaintiff is entitled to recover all the legal damages which he has sustained; and nothing less than the value of the property, with interest on the amount, would be legal or just compensation." See also: Moore v. Schultz, 1869, 31 Md. 418, another case of trespass d. b. a.

It is, therefore, correct to say that where the rule is that interest is discretionary, it has been applied with increasing discrimination, the discretion being regarded as judicial rather than arbitrary, so that interest is not withheld when justice requires its allowance.

■ Although at early common law, interest was not allowable in actions of tort, it is now almost universally recognized that interest is recoverable upon the value of chattels tortiously converted, destroyed, or damaged. A.L.I., Restatement, Torts, Sec. 913, Comment (a), subsection (1); Annotation: "Interest on Amount of Damage, 36 A.L.R. 2d 337, Sec. 63, et seq., p. 473 et seq.; 1 Oleck, Damages to Persons and Property (1957) Sec. 300, p. 641, et seq. For Maryland cases in which interest was allowed in actions of conversion, see: Andrews v. Clark, 1890, 72 Md. 396, 20 A. 429, 434; Seaboard Airline Ry. Co. v. Phillips, 1908, 108 Md. 285, 70 A. 232, 237; Merchants' National Bank v. Williams, 1909, 110 Md. 334, 72 A. 1114, 1117; Saunders v. Mullinix, 1950, 195 Md. 235, 72 A.2d 720, 722.

Where recovery is for bodily harm, emotional distress, or similar intangible elements of damage insusceptible of precise measurement, the award is presumed to be comprehensive, and an additional allowance of interest is denied; but where valuation is reasonably estimable, as for the loss of a chattel, the injury is ordinarily not redressed by allowing only the value of the chattel in disregard of loss of the use of money thereby occasioned.

The same is true where the plaintiff has been compelled, as is the case here, to continue payments over a period of time during which he was deprived of the benefit to which those payments entitled him, as in this case. Indeed, the Restatement recognizes that under the modern rule, even in suits for bodily harm, the delay in compensation after the plaintiff has incurred financial loss, is an element to be considered in assessing damages. Where, as here, the plaintiff was compelled to lay out large sums over a period of years, full compensation would be denied him if he were not permitted to recover interest on the amount of his expenditures. As to those damages which represent substantial expenditures of definite sums, the claims became, in essence, ascertained from the time when the proven outlays were made, and interest should be computed on them.

In Chesapeake & Ohio Railway v. Elk Refining Co., 4 Cir., 1950, 186 F.2d 30, 33, where there was recovery for the negligent destruction of a tractor-trailer, this Court modified the judgment by the addition of interest. The case arose under West Virginia law. Judge Parker said:

"An award two years after an injury occurs is certainly not the equivalent of an award made at the time of the injury; and the great weight of authority is to the effect that full compensation for damage to or destruction of property requires that, even in the case of unliquidated demands, account be taken of the period that has elapsed between the damage and the award and that allowance be made for interest. * * *

" '* * * Is there any reason why a person sustaining injury and damage to his property from the negligent act of another should not receive just what he has lost as nearly as this may be accomplished in a court of justice? If a person's property is destroyed or damaged, why is he not entitled to be compensated to the full extent of its value in money so that he may replace the same with other property of a like nature? If on the day of its injury or destruction he restores or replaces it with his own money, why is he not entitled to interest on that money to the date of repayment? If he had loaned the money to some one, he certainly would be entitled to interest, and, if he borrowed it from some one, he would likely have to pay interest for its use. By being awarded legal interest, therefore, he is simply placed in statu quo, and nothing short of this is full compensation, and that is just what the law aims to accomplish.' "

█ It is well established that where the lost or damaged article has a market value, interest is computed upon that value (See: King v. McGuff, 1950, 149 Tex. 432, 234 S.W.2d 403; Rode v. Adley Express Co., 1943, 130 Conn. 274, 33 A.2d 329); and where it is not to be had on the market, the contract price (less salvage value in case of damage) should be the basis. See, A.L.I., Restatement, Tort, Sec. 917, Ill. 1.

What Judge Parker pointed out in Elk Refining Co. is true here, namely, that while not liquidated in the strict sense of the term, the damage was readily ascertainable. The direct damage to the press, found to be $18,290.00, was promptly ascertainable, and other items, particularly the out of pocket expenses incurred in travel to Spain and necessary engineering work there later became ascertainable.

██ In the instant case, the District Judge, after carefully sifting the evidence, allowed certain claimed damages and disallowed others. He declined to add interest because of the "plaintiffs' padding of their claim." There is no further explanation, and the precise ground for the statement is left uncertain. If it means that a plaintiff who claims more than he ultimately recovers is automatically to be denied interest on that part of the claim which he establishes to the court's satisfaction, it is an erroneous rule. If it means that the

plaintiff has acted fraudulently and that it would be inequitable, under the circumstances, to allow him interest, a different situation is presented. If it means that by asserting an exorbitant demand, the plaintiff in fact discouraged settlement, he would not be justly entitled to interest during the interval of delay occasioned by him. And a plaintiff might in justice have disentitled himself to interest as to some part of his claim, without affecting other parts.

We think that the ground upon which the Court acted on this question needs to be clarified. Accordingly, while affirming as to the award heretofore made, the case will be remanded for further consideration and such action as to interest as are not inconsistent with the views here expressed, and as the District Court may deem appropriate.

Judgment affirmed and case remanded.